## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE RITZ HOTEL, LTD.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SHEN MANUFACTURING CO., INC.** | : | **05-4730** |

## MEMORANDUM AND ORDER

**NORMA L. SHAPIRO, S.J.**                                    **MARCH 17, 2009**

Plaintiff The Ritz Hotel, Ltd. ("RHL"), filed for declaratory relief against Shen

Manufacturing Co., Inc. ("Shen").  Shen filed amended counterclaims against RHL under §§ 14,

32, 35, and 38 of the Lanham Trade-Mark Act ("Lanham Act"), 15 U.S.C. §§ 1064, 1114, 1117,

and 1120.  Shen also filed supplemental state-law claims for fraud and trademark violations.  The

court will grant in part and deny in part Shen's Motion for Partial Summary Judgment on count I

of its amended counterclaim for cancellation of fifteen (15) RHL trademark registrations.  The

court will also grant in part and deny in part RHL's Motion for Partial Summary Judgment.

## I.        PROCEDURAL HISTORY

Shen and RHL have each filed a Motion for Partial Summary Judgment on count I of

Shen's amended counterclaim for cancellation of fifteen[1] (15) RHL trademark registrations as

abandoned or procured through fraud:

- 2,669,712 – RITZ ESCOFFIER (specialty foods);
- 1,980,522 – RITZ (cutlery);

---

[1]The motion originally sought to have nineteen (19) registrations cancelled, but RHL has
agreed that four have been abandoned:  2,895,080 (RITZ PARIS – floor coverings), 2,728,529
(RITZ PARIS – fabrics), 1,307,072 (HOTEL RITZ – glassware), and 3,043,001 (RITZ PARIS –
dishware).  See the court's Order of December 19, 2008 (paper no. 77).

- 2,723,443 – RITZ PARIS (cutlery);
- 2,788,043 – RITZ PARIS (personal care products);
- 2,712,917 – RITZ PARIS (books);
- 2,776,036 – RITZ PARIS (fabrics);
- 2,778,149 – RITZ PARIS (fabrics);
- 2,723,441 – RITZ PARIS;
- 2,731,375 – RITZ PARIS (leather);
- 2,791,094 – RITZ PARIS (lamps);
- 2,974,982 – PUTTING ON THE RITZ (shower curtains);
- 2,706,448 – RITZ PARIS (games and toys);
- 2,723,442 – RITZ PARIS (candles);
- 2,726,595 – RITZ PARIS (clocks and watches); and
- 2,790,268 – RITZ PARIS (clothing).

Shen's motion seeks summary judgment with regard to all of the registrations listed in count I of its amended counterclaim for abandonment or fraudulent procurement. Part III of RHL's motion seeks summary judgment on Shen's amended counterclaim for cancellation with regard to these registrations: 2,788,043, 2,712,917, and 2,723,423 (as allegedly abandoned), and 2,778,149, and 2,776,036 (as allegedly fraudulently procured).[2]

## II.    LEGAL STANDARDS

A motion for summary judgment is granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving no genuine issue of material fact exists. Matsushita v. Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986); Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996).

---

[2]RHL's Motion for Partial Summary Judgment on Count I of Shen's amended counterclaim for cancellation of RHL trademark registration no. 2,728,529 will be denied as moot, as this was among the four registrations RHL voluntarily abandoned. See supra n.1.

A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  See Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 889, 890 (3rd Cir. 1992).  Rather, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Someone damaged by an existing trademark may petition under § 14 of the Lanham Act, 15 U.S.C. § 1064, to cancel that mark "at any time" if, inter alia, "the registered mark . . . has been abandoned, or its registration was obtained fraudulently . . . ."  The district courts of the United States have original jurisdiction over § 14 cancellation claims and may order the Director of the PTO to cancel, in whole or in part, any registration found abandoned or fraudulently procured.  Lanham Act §§ 37, 39(a), 15 U.S.C. §§ 1119, 1121(a).

### A.    Abandonment

"The right to exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace."  La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,  495 F.2d 1265, 1271 (2nd Cir. 1974).  Trademark rights continue so long as the mark's use is "deliberate and continuous, not sporadic, casual, or transitory."  Id., 495 F.2d at 1272.

The Lanham Act, 15 U.S.C. § 1051 et seq., provides more specific requirements for maintaining trademarks registered with the PTO.  The degree and volume of a mark's "use" must suggest that the mark's use is "bona fide . . . made in the ordinary course of trade, and not merely to reserve a right in a mark."  Lanham Act § 45, 15 U.S.C. § 1127.   A trademark on goods must also be "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such

-3-

placement impracticable, then on documents associated with the goods or their sale." Id.

A trademark will become "abandoned" and subject to cancellation "[w]hen its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Non-use for 3 consecutive years shall be prima facie evidence of abandonment." Id. Even if a petitioner for cancellation shows non-use for three consecutive years, objective facts can explain non-use and negate § 45's presumption of an intent to abandon. See American Intern. Group, Inc. v. American Intern. Airways, Inc., 726 F. Supp. 1470, 1480 (E.D. Pa. 1989). "[A]bandonment, being in the nature of a forfeiture, must be strictly proved." U.S. Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 139 (3rd Cir. 1981).

De minimis use of a mark in commerce is not "bona fide" and may result in a finding of abandonment. See Lucent Information Mgmt., Inc. v. Lucent Technologies, Inc., 186 F.3d 311, 317 (3rd Cir. 1999); Exxon Corp. v. Humble Exploration Corp., 695 F.2d 96, 99 (5th Cir.1983). However, once minimal sales volume suggests an ongoing program to exploit the mark commercially, the question of whether a trademark's use in commerce is actually "bona fide" is almost always one of material fact. See Le Galion, 495 F.2d at 493.

A plaintiff seeking to show that a registration has been abandoned must show that all of the goods and services associated with the registered trademark have ceased being used in commerce. See Omega S.A. v. Omega Engineering, Inc., 396 F. Supp. 2d, 166, 186 (D. Conn. 2005). If some of the goods are still in use, the registration may be partially cancelled by deletion of the unused goods from the registration. See Levi Strauss & Co. v. GTFM, Inc., 196 F. Supp. 2d, 971, 976-77 (N.D. Cal. 2004).

-4-

### B.    Fraudulent procurement

Fraud in procuring a mark occurs when a trademark applicant or registrant knowingly makes false, material representations of fact to the PTO in applying for or seeking to maintain a registration. See Metro Traffic Control v. Shadow Network, 104 F.3d 336, 340 (Fed. Cir.1997). Even a false statement to the PTO is not fraudulent if it results from an honest misunderstanding, inadvertence, negligent omission or the like, rather than a willful intent to deceive. See Smith International, Inc. v. Olin Corp., 209 U.S.P.Q. 1033, 1043 (T.T.A.B. 1981).  Proof of fraud requires proof of scienter, i.e., the false statement was made knowingly.  Marshak v. Treadwell, 240 F.3d 184, 196 (3rd Cir.2001).  A party seeking cancellation for fraudulent procurement must prove the alleged fraud by clear and convincing evidence.  L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed.Cir.1999).

## III.    DISCUSSION

### A.    Trademark 2,669,712 ("'712") – RITZ ESCOFFIER (specialty foods)

Shen seeks to have the '712 registration cancelled as abandoned and procured through fraud.  RHL applied to the U.S. Patent and Trademark Office ("PTO") for this registration on April 3, 2000; the PTO issued the registration on December 31, 2002.[3]  The trademark is registered for the following goods and services in International Classes 29 and 30:

> Jams, jellies, marmalades and fruit preserves sold through specialty food stores, through gourmet food sections of department stores, by mail order, via television and via a global computer network; sauces; soups; soup mixes; pickles; cooking oil; salad oil; edible oil; vinegar; dried mushrooms; dried morels; processed olives; salad dressing; caviar; crystallized fruit; foie gras; fruit topping; canned fruit; salmon; dried fruit; meat juices;

_____

[3]A trademark registration and its filing status is a matter of public record.  As of January 15, 2009, the PTO trademark database is accessible on the T(rademark) E(lectronic) S(earch) S(ystem), at http://tess2.uspto.gov/bin/gate.exe?f=searchss&state=hia8ts.1.1 .

pate; quenelles; preserved truffles; pickled vegetables; vegetable based food beverages.

On June 21, 2002, RHL, to maintain the registration, filed a notice stating that the RITZ ESCOFFIER mark was in use as early as April 26, 2002, "on the goods identified in the Notice of Allowance in this application," i.e., the goods listed in the trademark registration, in both International Classes 29 and 30. (Shen's Mot. for Summ. Judg., ex. 27.)

RHL entered a licensing agreement to sell RITZ ESCOFFIER products in the U.S. through U.S. Foodservice, Inc. ("USF"). Approximately $14 million of RITZ ESCOFFIER-branded goods were sold under this license before December 31, 2005. USF decided not to sell some of the licensed goods associated with the '712 mark. RHL is presently seeking to license the RITZ ESCOFFIER mark with a different U.S. distributor. (Decl. of Annick Migne, ¶¶ 11-13.)

RHL admits many of the goods listed in the trademark registration have not been in use in commerce within the last 5 years: "sauces; soups; soup mixes; salad dressing; caviar; fois gras; salmon; meat juices; pate; quenelles; vegetable based food for beverages; coffee; coffee substitutes; tea; honey; almond paste; chutney; cocoa; and horseradish." (Pl's Sup. Resp. to Interrogatories, I.7, p. 5.) These unused goods will be ordered deleted from the '712 registration. Whether the remaining goods associated with the registration have been abandoned remains a question of fact. Shen's Motion for Summary Judgment on its amended counterclaim to have this registration cancelled as abandoned will be denied.

In the alternative, Shen seeks to have the '712 registration cancelled for fraudulent procurement. The affidavit of use RHL filed on June 21, 2002, to maintain this registration, as required by 37 C.F.R. § 2.88, did not specify any goods to be deleted from the registration for

-6-

non-use. RHL had licensed this mark to USF; USF had decided not to sell many of the food items listed with the registration. Shen asserts that RHL's reckless failure to investigate whether all the goods associated with the '712 registration were in use is sufficient to support a claim for cancellation for fraudulent procurement. RHL asserts that its failure to delete goods in its statement of use was inadvertent error.

Even if RHL should have known its statement of use was partially false when filed,[4] it would not have been indisputably material to the continued maintenance of the entire '712 registration. The PTO would not have deleted the '712 registration had it known that some associated goods were not in use at the time RHL filed its Statement of Use; the PTO would have deleted the unused goods without cancelling the registration. See Trademark Manual of Examining Procedure (5th) ("TMEP") § 1109.13. Shen's Motion for Partial Summary Judgment on its amended counterclaim to have the '712 registration abandoned as fraudulently procured will be denied.

**B.     Trademarks 1,980,522 ("'522") – RITZ (cutlery), and 2,723,443 ("'443") – RITZ PARIS (cutlery)**

RHL applied for the '522 registration on September 30, 1994; the PTO issued the registration on June 18, 1996. Shen seeks to have this registration cancelled for abandonment for

---

[4]RHL is not a domestic corporation and all its sales in the United States are through intermediary licensees. USF licensed the '712 registration from 2000 through 2005; RHL's oversight of the '712 registration's use in United States commerce was indirect. If USF had waited until after RHL filed its § 8 statement for the '712 registration to inform RHL that not all the goods associated with the '712 registration were actually being produced and marketed, RHL could reasonably claim it filed its § 8 statement in good faith.

RHL has provided an overview of total sales by USF of goods produced under the '712 license and the royalties it paid. (Decl. of Annick Migne, ex. I.) This overview does not show whether RHL knew more than USF's total revenues and royalty payments during the term of the '712 license.

failure to substantiate use in U.S. commerce and fraudulent procurement.  The '522 registration

originally listed associated goods in International Classes 8 and 20; the Class 8 goods associated

with the registration are "cutlery in precious metal or not, namely forks, knives, spoons and

ladles, spatulas, and scoops."  RHL admits it has sold only Class 8 goods branded with its RITZ

mark; the Class 20 goods will be ordered deleted from the registration. (Pl.'s Opposition to

Def.'s Mot. for Part. Summ. Judg., p. 20, n.4.)

RHL applied for the '443 registration on December 10, 2001; the PTO issued the

registration on June 10, 2003.  Shen and RHL have each filed a cross-Motion for Partial

Summary Judgment on Shen's amended counterclaim to have this registration cancelled for

abandonment.

The trademark is registered for the following goods and services:

Cutlery made of precious metal; forks and spoons; table knives; dessert knives; fish
knives; butter knives; cheese knives; bread knives; table forks; fish forks; cake forks;
dessert forks; serving forks; table spoons; coffee spoons; serving spoons; mocha spoons;
ladles; pie slicers; salad servers; sugar tongs; grape scissors; crab clippers; nut crackers.

RHL admits it has not sold sugar tongs, grape scissors, crab clippers, or nut crackers within the

last five years; these goods will be ordered deleted from the registration.  (RHL's Response to

Shen's Second Request for Admissions, request nos. 401-04.)

RHL licensed Roux Marquiand, S.A. to manufacture and market cutlery and silverware

under both the '522 registration RITZ mark and the '443 registration RITZ PARIS mark until

June 31, 2007.  Roux Marquiand sold $ 95,000 of RITZ PARIS-branded goods in the U.S.

between 2002 and 2005.  The licensing agreement ended when Roux Marquiand went into

liquidation in January, 2006. (Decl. of Annick Migne, ¶¶ 22-23, exs. P,Q, R.)  RHL has neither

-8-

affirmed nor denied an intention to license either the '522 or '443 registration in the future.

In 2002, RHL filed a statement of ongoing use to maintain the '522 registration, as required by § 8 of the Lanham Act, 15 U.S.C. 1058. In its § 8 filing, RHL stated that all the Class 8 goods associated with the registration were in use in U.S. commerce, including scoops and spatulas. (Shen's Mot. for Part. Summ. Judg., Ex. 19.) RHL asserts that the ladles and pie servers sold by Roux Marquiand qualify as "scoops" and "spatulas."[5] (Pl.'s Opposition to Def.'s Mot. for Part. Summ. Judg., p. 20; see Decl. of Annick Migne, ¶¶ 22-23 & Ex. O.) The '443 registration lists both ladles and pie servers; RHL does not admit either of those goods are no longer in use in commerce. If Roux Marquiand sold ladles and pie servers in the United States as RHL's licensee, the evidence does not indicate whether those items were branded RITZ (under the '522 registration) or RITZ PARIS (under the '043 registration).

RHL filed under § 9 of the Lanham Act, 15 U.S.C. 1059, to renew the '522 registration for a second ten-year period on June 14, 2006; the PTO reissued the registration on September 30, 2006. RHL's § 9 filing claimed that the '522 registration RITZ mark was in use in commerce on all its listed Class 8 goods. (Shen's Mot. for Part. Summ. Judg., ex. 25.) According to Shen, RHL has not presented evidence that the RHL RITZ or RITZ PARIS marks have been in use in United States commerce since February, 2002. (Id., ex. 19.) RHL has provided a summary statement of Roux Marquiand's royalty payments on both licenses from 2000 through 2005, (Decl. of Annick Migne, Ex. P.), as well as a brief summary list of goods associated with the '522 registration sold in the United States through 2006 by Roux Marquiand. (Id., Ex. Q.)

---

[5]"Ladle" and "pie server" are "louche" and "pelle a tart," respectively, in French, according to RHL.

RHL contends that its licensee, Roux Marquiand, S.A., exported RITZ- and RITZ

PARIS-branded silverware and cutlery to the United States until its liquidation in January, 2006.

A jury could reasonably find that Roux Marquiand sold RITZ- and RITZ-PARIS branded cutlery

in the United States between February, 2002 and its liquidation in early 2006.  RHL's statement

of royalty payments from Roux Marquiand from 2000 through 2005 is evidence that RITZ and

RITZ PARIS cutlery was in commerce somewhere over that period.  The royalty statement does

not specify the amount of royalties derived from sales of RITZ or RITZ PARIS cutlery by

country, goods, license, or brand.  Some of those sales might have been to the United States.

Shen has not proven conclusively that RHL collected no royalties from United States

sales during that time; goods with both the RITZ and RITZ PARIS brands could have been sold.

The court will deny Shen's Motion for Partial Summary Judgment on its amended counterclaim

to have the '522 and '443 registrations cancelled as abandoned.  Neither has RHL demonstrated

beyond material dispute its continued use of the '443 registration or a credible intent to resume

use.  Thus, RHL's Motion for Partial Summary Judgment on Shen's amended counterclaim to

cancel the '443 registration will also be denied.

In the alternative, Shen seeks to have the '522 registration cancelled for fraudulent

procurement.  Shen asserts that RHL knowingly filed two false statements with the PTO in order

to maintain and renew the '522 registration.[6]  RHL's § 8 statement of use, from 2002, listed

scoops and spatulas among the associated RITZ-branded cutlery goods in use.  Shen claims RHL

---

[6]Shen, in its amended counterclaim, also seeks cancellation of the '522 registration as
procured fraudulently on the basis of a false initial statement of "bona fide" intent to use.
However, Shen does not discuss this basis for cancellation of the '522 registration in its Motion
for Partial Summary Judgment, or provide evidence that RHL's intention to introduce the
associated goods into U.S. commerce was not "bona fide."

did not introduce scoops and spatulas into United States commerce.  RHL insists that all of the '522 registration's associated goods were in fact in use in the United States when it filed its first declaration.[7]

Shen claims that when RHL filed under § 9 in June, 2006, to renew the registration for a second ten-year period, RHL knew its statement that the registration was in use on the associated goods was likewise false, because RITZ-branded cutlery had not been sold in the United States by Roux Marquiand since February, 2002, and RHL's June 2006 filing was strategic as part of its ongoing litigation with Shen.  RHL claims that Roux Marquiand was distributing all of goods associated with the registration in the United States through 2006 and provided royalty statements for the '522 registration from 2000 through 2005.

If, as alleged in Shen's counterclaim for cancellation, RHL's fraud was its failure to inform the PTO that the '522 registration was either wholly or partially abandoned, Shen's claim for cancellation based on fraud is only as strong as its abandonment claim.  There remain material questions of fact whether Roux Marquiand, as RHL's licensee, sold any or all the RITZ-branded goods associated with the '522 registration throughout the term of its license.  Since the court will deny summary judgment on Shen's claim to have the '522 registration cancelled as abandoned, it will not grant it on the claim RHL lied to the PTO in stating that the registration was in use.[8]

---

[7]Neither party has briefed whether, as a matter of law, there needs to be a one-to-one correspondence between the list of goods associated with a registration and actual goods in use.

[8]It is unclear as a matter of law how recently a mark must have been in use for a registrant to state to the PTO that the mark is still in use.  Roux Marquiand went into liquidation in January, 2006, and RHL did not file to renew the '522 registration until June.  It is reasonable to assume that RHL knew it did not have a licensed distributor of RITZ cutlery in June, 2006; RHL

Shen argues in the alternative that RHL's failure to inform the PTO of goods to be deleted, first in its 2002 § 8 filing, and four years later in its § 9 application for renewal, was so egregious and wilful that the entire registration should be cancelled.  Shen relies on <u>General Car and Truck Leasing Systems, Inc. v. General Rent-a-Car, Inc.</u>, 17 U.S.P.Q. 2d (BNA) 1398 (S.D. Fla. 1990) (upholding the Trademark Trial and Appeals Board's decision to cancel an entire registration as "tainted" by the registrant's fraudulent assertion that its registration was in use in all of associated services).  In <u>General Car</u> there was no question that the defendants had knowingly and repeatedly lied to the PTO about renting boats and aircraft when they had never done so at any time.  <u>Id.</u>.  Shen has not proven its allegations of RHL's fraud on the PTO regarding the '522 registration by clear and convincing evidence.  Shen's Motion for Partial Summary Judgment on its amended counterclaim to have the '522 mark cancelled as fraudulently procured will be denied.

### C.    Trademarks 2,788,043 ("'043") – RITZ PARIS (personal care products), and 2,712,917 ("'917") – RITZ PARIS (books)

Shen and RHL have each filed a cross-Motion for Partial Summary Judgment on Shen's amended counterclaim to have these registrations cancelled for abandonment.

RHL applied for the '043 registration on December 1, 2001; the PTO issued the registration on December 2, 2003.

---

must have known by then that Roux Marquiand was bankrupt.

    The court does not need to decide whether RHL lied when it stated the '522 registration was in use, because the materiality of such representation is not beyond dispute.  If RHL had filed an incorrect statement of use when it did not have means for placing RITZ-branded cutlery under the '522 registration into United States commerce, the PTO would have asked RHL to amend the declaration of use attached to its § 9 application to explain when the goods would be reintroduced.  See 15 U.S.C. § 1059; 37 C.F.R. §§ 2.161(f)(2), 2.166; <u>Trademark Manual of Examining Procedure</u> (5th) § 1109.13.

The trademark is registered for the following goods and services:

> Personal care products, namely, hair care preparations, nail care preparations, skin care preparations, skin cleansers, skin moisturizers; soaps; fragrances for personal use; essential oils for personal use; cosmetics; bath products, namely, bath crystals, bath foams, bath gels, bath oils, bath lotions, bath pearls, bath powder, bath salts (non-medicated), bubble bath.

RHL admitted it "does not believe that the RITZ PARIS mark has been used in commerce within the last five years for . . . nail care preparations; bath products, namely bath crystals; bath foams; bath gels; bath oils; bath lotions; bath pearls; bath powder; bath salts; bubble bath." (Pl's Sup. Resp. to Interrogatories, I.7, p. 2.)  These goods will be ordered deleted from the registration.

RHL applied for the '917 registration on December 10, 2001; the PTO issued the registration on May 6, 2003.  The trademark is registered for use with the following goods and services:

> Books in the field of food and drink; cook books; recipe books; picture books  address books; children's books; books in the field of interior design; historical non-fiction books; note cards; cocktail napkins made of paper; diaries; stationery; bulletin boards; photo albums; catalogs offering luxury consumer products; envelopes; pens; blotting pads; post cards.

RHL admits that it has not sold the following within the last five years:  note cards, cocktail napkins, stationery, bulletin boards, photo albums, envelopes, and blotting pads.  (RHL's Response to Shen's Second Request for Admissions, request nos. 369-70, 372-74, 376, 378.) These goods will be ordered deleted.

There are material questions of fact whether the '043 and '917 marks have been abandoned.  Shen has not presented evidence that RHL has abandoned all the goods associated with these registrations, and RHL asserts it has steadily sold associated goods to United States customers in its Paris hotel boutique within the last five years.  Because there are issues of

-13-

material fact, Shen's Motion for Partial Summary Judgment on its amended counterclaim to have these registrations cancelled will be denied.

RHL has not conclusively proven that its goods under the '043 and '917 registrations have been in use in United States commerce within the last five years. Section 45 of the Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Congress' power to regulate imports and exports does not extend to direct control over commerce by foreign-owned businesses seeking to sell goods and services to United States nationals abroad. For goods sold from the Ritz Hotel boutique to be considered "in use in commerce," RHL would have to supervise and direct the transport of those goods into the United States.[9] See TMEP § 901.03. RHL does not aver that it has done so.

There also is a question of material fact whether RHL sales directly to the United States of goods associated with the '043 and '917 registrations are substantial enough in volume to maintain these registrations. The court will deny the RHL Motion for Partial Summary Judgment on count I of Shen's amended counterclaim with regard to the '043 and '917 registrations.

**D.    Trademarks 2,776,036 ("'036") and 2,778,149 ("'149") – RITZ PARIS (fabrics)**

RHL applied for the '036 and '149 registrations (collectively, the "Fabricut" registrations) on March 13, 2000; the PTO issued the '036 registration on October 21, 2003 and the '149 registration on October 28, 2003. In its applications for the Fabricut marks, RHL listed the '522 mark as its own related registration.

---

[9]The phrase "use in commerce" should arguably be read as "use affecting commerce," within modern Commerce Clause jurisprudence. See 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 19:123.

The goods associated with the '036 and '149 registrations include various fabrics for use in draperies, curtains, upholstery, bed linens, and interior design. Both the '036 and '149 marks are presently licensed to Fabricut, Inc.; it markets luxury interior designs labeled as its "RITZ PARIS" collection and bearing the FABRICUT mark. The RITZ PARIS mark appears on the label attached to the fabric swatch samples, but not on the actual fabrics. (Shen's Mot. for Part. Summ. Judg., ex. 20.)

Shen moves for partial summary judgment to have the Fabricut registrations cancelled as abandoned, but it did not claim abandonment in count I of its amended counterclaim. Instead, Shen sought to have the '036 and '149 marks cancelled as having been fraudulently procured. "At the summary judgment stage, the proper procedure . . . to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)." Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir.2004).[10] Shen's Motion for Partial Summary Judgment on count I of its amended counterclaim, for cancellation of the '036 and '149 marks on the ground of abandonment, will be denied.

RHL seeks summary judgment on Shen's amended counterclaim for cancellation of the Fabricut registrations as having been fraudulently procured. Shen argues RHL knew that the '522 mark had been procured fraudulently but cited the registration anyway to persuade the PTO to issue the '036 and '149 registrations. RHL responds that it listed the '522 registration on its applications in accordance with the PTO recommended practice to avoid issuing duplicative registrations, so its applications for the Fabricut registrations were not per se false or fraudulent,

---

[10]Even if Shen had sought to have the Fabricut marks cancelled as abandoned in its amended counterclaim, there would still remain questions of fact.

and Shen must still prove the registrations were procured fraudulently.

The PTO will deny an application for a trademark stating a false claim of ownership. "Prior registrations of the same or similar marks owned by the applicant should be identified in the application [for a trademark registration.]" 37 C.F.R. § 2.36. "The main purpose of the rule is to provide the examining attorney with information necessary for proper examination." TMEP, § 812. "Normally, identification of a registration is necessary because the registration would, if not owned by the applicant, be a basis for refusal under §2(d) of the [Lanham] Act, 15 U.S.C. §1052(d)." Id.

"If an applicant includes a claim of ownership of a prior registration in the application as filed, the examining attorney should accept the claim without further proof of ownership and should not cite the registration as a reference under § 2(d) of the Act." TMEP, § 812.01. An applicant's failure to list associated registrations is not per se grounds for denial. Instead, the examiner checks for associated registrations. If the examiner finds one, the applicant is then asked if it owns that registration, and if so, to provide proof of ownership including chain of title. Id.

Nothing in the PTO's regulations and rules suggests that a trademark application to the PTO listing an associated registration will necessarily be denied or voided if the associated registration is found to have been fraudulently procured (as opposed to belonging to someone else). The fraudulent procurement of the associated registration does not imply that the trademark applied for was not the property of the applicant, to use on goods or services in commerce. Even if the '522 registration were tainted, citing that registration in the RHL applications for the Fabricut registrations is not evidence that those registrations are subject to

-16-

cancellation for fraudulent procurement.

Shen has not presented evidence sufficient for a reasonable jury to decide that RHL knew its applications for the Fabricut registrations had been filed based on false or fraudulent information. RHL's Motion for Partial Summary Judgment on Shen's amended counterclaim for cancellation of the Fabricut marks as fraudulently procured will be granted.

### E.   Trademark 2,723,441 ("'441") – RITZ PARIS

RHL applied for the '441 registration on December 10, 2001; the PTO issued the registration on June 10, 2003. Shen's Motion for Partial Summary Judgment seeks to have this registration cancelled for abandonment, but Shen's amended counterclaim did not include this registration. Shen's Motion for Partial Summary Judgment on its amended counterclaim to have the '441 registration cancelled as abandoned will be denied.

### F.   Trademarks 2,731,375 ("'375") – RITZ PARIS (leather) and 2,791,094 ("'094") – RITZ PARIS (lamps)

RHL applied for the '375 registration on December 10, 2001, and the PTO issued the registration on July 1, 2003. The trademark is registered for the following goods and services: "Leather and imitation leather, namely handbags, travel bags; toiletry kits sold empty; make-up kits sold empty; umbrellas." RHL admits it has not sold handbags, travel bags, toiletry kits, or make-up kits within the last five years; RHL denies it has sold no umbrellas under this mark in this time. (RHL's Response to Shen's Second Request for Admissions, request nos. 356-60.)

RHL applied for the '094 registration on April 17, 2002; the PTO issued the registration on December 9, 2003. The trademark is registered for use with lamps; RHL admits it has not sold any lamps with the RITZ PARIS mark on them within the last five years. (Pl.'s Sup. Resp.

to Interrogatories, I.7, p. 9.)

Shen seeks to have both these registrations cancelled for abandonment.  RHL neither claims they are in use nor avers more than cursory allegations of its intent to use them in commerce in the future.  (Pl.'s Opposition to Def.'s Mot. for Part. Summ. Judg., pp. 15-17.) Shen's Motion for Partial Summary Judgment on count I of its amended counterclaim, for cancellation on grounds of abandonment, will be granted with regard to the '375 and '094 registrations.

### G.      Trademark 2,974,982 ("'982") – PUTTING ON THE RITZ (shower curtains)

The '982 registration was originally registered by Andre Richard Co. Corp. [sic] for use with shower curtains; it was subsequently assigned to RHL.  The PTO last reissued the registration on July 26, 2005.  Shen seeks to have this registration cancelled for abandonment. RHL admits that this mark has not been used in commerce within the last five years, but claims it was registered under § 44 of the Lanham Act, 15 U.S.C. § 1126; that provision only requires a "bona fide" intent to use the mark in commerce.

The '982 mark was registered originally under § 1(a) of the Lanham Act, conditioning the issuance of a registration on its current regular use in commerce.  The mark's latest reissue on July 26, 2005, was again based on § 1(a).  RHL's admission that the '982 mark has not been in use in commerce within the last five years, together with its failure to establish an intent to reintroduce the mark in commerce, justifies cancelling the mark.  Shen's Motion for Partial Summary Judgment on count I of its amended counterclaim, for cancellation on grounds of abandonment, will be granted with regard to the '982 mark.

**H.      Trademarks 2,706,448 ("'448") – RITZ PARIS (games and toys), 2,723,442 ("'442") – RITZ PARIS (candles), 2,726,595 ("'595") – RITZ PARIS (clocks and watches), and 2,790,268 ("'268") – RITZ PARIS (clothing).**

RHL applied for all four of these registrations on December 10, 2001, and Shen seeks to

have all four cancelled as abandoned.

The PTO issued the '448 registration on April 15, 2003, for use with the following goods

and services:

> Games and toys, namely, stuffed toy animals, clothing for stuffed toy animals, balloons,
> toy banks, bean bags, toy building blocks, toy construction blocks, board games, toy
> boxes, card games, dolls, doll cases, doll houses, doll house furnishings, doll clothing, toy
> bakeware, toy cookware, dog toys, jigsaw puzzles, jump ropes, kites, marionette puppets,
> music box toys, soft sculpture plush toys, ride-on toys, rocking horses, toy swords, toy
> action figures, toy vehicles, bathtub toys, play wands, wind-up toys, yo-yos.

RHL admits that with the exception of "toy banks," "stuffed toy animals," and "soft sculpture

plush toys," none of these goods has been in use in commerce within the last five years. (RHL's

Response to Shen's Second Request for Admissions, request nos. 307, 310-31, 333-41.)

The PTO issued the '442 registration on June 10, 2003 for use with candles. Shen admits

that RHL has sold at least some RITZ PARIS-branded candles within the last five years. (Shen's

Reply to RHL's Opposition to Shen's Mot. for Part. Summ. Judg., p. 23.)

The PTO issued the '595 registration on June 17, 2003 for use with the following goods

and services: "Clocks and chronometric instruments, namely watches; key rings made of

precious metal." RHL admits it has not sold clocks within the last five years. (RHL's Response

to Shen's Second Request for Admissions, req. 342.)

The PTO issued the '268 registration on December 9, 2003 for use with the following

goods and services: "T-shirts; sweatshirts; polo shirts; rugby shirts; silk lingerie; silk scarves;

headwear, namely caps." RHL admits it has not sold any rugby shirts, silk lingerie, headwear, or

caps within the last five years. (RHL's Response to Shen's Second Request for Admissions,

request nos. 350-51, 353-54.)

Shen asserts, with evidentiary support, that all of these marks are either not in use in

United States commerce or the use is de minimis. RHL admits that many of the goods associated

with these registrations have not been in use in commerce within the last five years; these goods

will be ordered deleted. Shen has not shown beyond material dispute that RHL has ceased using

any of the above-listed four trademark registrations; these marks can not be ordered cancelled by

summary judgment without unequivocal evidence or RHL's own admission of abandonment.

Shen's Motion for Partial Summary Judgment on count I of its amended counterclaim, for

cancellation of the '448, '442, '595, and '268 registrations on the grounds of abandonment, will

be denied.

### III.   CONCLUSION

Shen's Motion for Partial Summary Judgment on count I of its amended counterclaim, for

cancellation of fifteen (15) of RHL's United States trademark registrations as abandoned or

fraudulently procured, will be granted as to registration nos. 2,791,094, 2,731,375, and 2,974,982

and denied as to all others. All goods associated with the registrations Shen sought cancelled in

count I of its amended counterclaim, admitted not in use in United States commerce for the

previous five years, will be deleted.

RHL's Motion for Partial Summary Judgment on count I of Shen's amended

counterclaim for cancellation of RHL's U.S. trademark registrations as having been abandoned

or fraudulently procured, will be granted as to registration nos. 2,778,149 and 2,776,036 and

denied as to registration nos. 2,788,043, 2,712,917, and 2,723,443.

The following RHL United States trademark registrations remain for trial of Count I of Shen's amended counterclaim for cancellation:  2,669,712, 1,980,522, 2,723,443, 2,788,043, 2,712,917, 2,723,441, 2,706,448, 2,723,442, 2,726,595, 2,790,268.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE RITZ HOTEL, LTD.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SHEN MANUFACTURING CO., INC.** | : | **05-4730** |

## ORDER

AND NOW, this 17th day of March, 2009, upon submission of briefs by the parties and after a hearing at which counsel for both parties were present, it is **ORDERED**:

1. Shen Manufacturing Co., Inc. ("Shen")'s Motion for Partial Summary Judgment on count I of its amended counterclaim for cancellation is **GRANTED** as to the following The Ritz Hotel, Ltd. ("RHL") United States trademark registrations:

- 2,731,375 – RITZ PARIS (leather);
- 2,791,094 – RITZ PARIS (lamps);
- 2,974,982 – PUTTING ON THE RITZ (shower curtains).

The Director of the United States Patent and Trademark Office is directed to cancel these registrations.

2. Shen's Motion for Partial Summary Judgment on count I of its amended counterclaim for cancellation is **DENIED** as to the following RHL United States trademark registrations:

- 2,669,712 – RITZ ESCOFFIER (specialty foods);
- 1,980,522 – RITZ (cutlery);
- 2,723,443 – RITZ PARIS (cutlery);
- 2,788,043 – RITZ PARIS (personal care products);
- 2,712,917 – RITZ PARIS (books);
- 2,778,149 – RITZ PARIS (fabrics);
- 2,776,036 – RITZ PARIS (fabrics);
- 2,723,441 – RITZ PARIS;
- 2,706,448 – RITZ PARIS (games and toys);
- 2,723,442 – RITZ PARIS (candles);
- 2,726,595 – RITZ PARIS (clocks and watches);
- 2,790,268 – RITZ PARIS (clothing).

3. The Director of the United States Patent and Trademark Office is directed to delete the following goods from the following RHL United States trademark registrations, as they have not been in use in United States commerce for five or more years:

- 2,669,712 – RITZ ESCOFFIER (specialty foods):  sauces, soups, soup mixes, salad dressing, caviar, fois gras, salmon, meat juices, pate, quenelles, vegetable based food for beverages, coffee, coffee substitutes, tea, honey, almond paste, chutney, cocoa, and horseradish;
- 1,980,522 – RITZ (cutlery):  all goods in International Class 20;
- 2,723,443 – RITZ PARIS (cutlery):  sugar tongs, grape scissors, crab clippers, and nut crackers;
- 2,788,043 – RITZ PARIS (personal care products):  nail care preparations, bath products, namely bath crystals, bath foams, bath gels, bath oils, bath lotions, bath pearls, bath powder, bath salts, and bubble bath;
- 2,712,917 – RITZ PARIS (books):  note cards, cocktail napkins, stationery, bulletin boards, photo albums, envelopes, and blotting pads;
- 2,706,448 – RITZ PARIS (games and toys):  games and toys, namely, clothing for stuffed toy animals, balloons, bean bags, toy building blocks, toy construction blocks, board games, toy boxes, card games, dolls, doll cases, doll houses, doll house furnishings, doll clothing, toy bakeware, toy cookware, dog toys, jigsaw puzzles, jump ropes, kites, marionette puppets, music box toys, ride-on toys, rocking horses, toy swords, toy action figures, toy vehicles, bathtub toys, play wands, wind-up toys, and yo-yos;
- 2,726,595 – RITZ PARIS (clocks and watches):  clocks; and
- 2,790,268 – RITZ PARIS (clothing): rugby shirts, silk lingerie, headware, and caps.

4. RHL's Motion for Partial Summary Judgment on count I of Shen's amended counterclaim is **GRANTED** as to the following RHL United States trademark registrations:

- 2,778,149 – RITZ PARIS (fabrics);
- 2,776,036 – RITZ PARIS (fabrics).

5. RHL's Motion for Partial Summary Judgment on count I of Shen's amended counterclaim is **DENIED** as to the following RHL United States trademark registrations:

- 2,788,043 – RITZ PARIS (personal care products);
- 2,712,917 – RITZ PARIS (books);
- 2,723,443 – RITZ PARIS (cutlery).

6. RHL's Motion for Partial Summary Judgment on count I of Shen's amended counterclaim for cancellation of RHL United States trademark registration no. 2,758,529 is **DENIED AS MOOT.**

Norma L. Shapiro
                                                                J.