IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE RITZ HOTEL, LTD. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHEN MANUFACTURING CO., INC. | : | 05-4730 |

MEMORANDUM

**NORMA L. SHAPIRO, S.J.**                                                            JUNE 4, 2009

Plaintiff, The Ritz Hotel, Ltd. ("RHL"), filed for declaratory relief against Shen Manufacturing Co., Inc. ("Shen") for trademark infringement under the Lanham Trade-Mark Act ("Lanham Act"). Shen filed counterclaims against RHL for trademark infringement and fraud under the Lanham Act together with supplemental state-law claims for fraud and trademark violations. Shen filed a Motion for Partial Summary Judgment (paper no. 46) on Count I of its amended counterclaim, under § 14 of the Lanham Act, 15 U.S.C. § 1064, for cancellation of nineteen (19) of RHL's United States trademark registrations as either abandoned or procured through fraud. By Memorandum and Order of March 17, 2009 (paper no.79, "Memorandum"), Shen's Motion for Partial Summary Judgment on Count I was denied. Pending is Shen's Motion for Reconsideration; it will be granted in part and denied in part.

I.      BACKGROUND

Count I of Shen's amended counterclaim, under § 14 of the Lanham Trademark Act ("Lanham Act"), 15 U.S.C. § 1064,[1] is for cancellation of nineteen (19) United States trademark

---

[1]Section 14 provides: "A petition to cancel a registration of a mark . . . may . . . be filed . . . by any person who believes he will be damaged . . . . (3) At any time if the registered mark . . . has been abandoned, or its registration was obtained fraudulently . . . ." A mark becomes

registrations owned by RHL as either abandoned or fraudulently procured.  Inter alia, Shen seeks to have RHL's registration nos. 2,669,712 (RITZ ESCOFFIER for specialty foods) ("the '712 mark"), 1,980,522 (RITZ for cutlery) ("the '522 mark"), and 2,728,529 (RITZ PARIS for fabrics) ("the '529 mark") cancelled for fraudulent procurement, and registration nos. 2,706,448 (RITZ PARIS for games and toys) ("the '448 mark"), 2,726,595 (RITZ PARIS for clocks and watches) ("the '595 mark"), 2,790,268 (RITZ PARIS for clothing) ("the '268 mark"), 2,788,043 (RITZ PARIS for personal care products) ("the '043 mark"), 2,712,917 (RITZ PARIS for books) ("the '917 mark"), and 2,723,442 (RITZ PARIS for candles) ("the '442 mark") cancelled as abandoned.  Shen's motion for summary judgment on its amended counterclaim to have the above-listed marks cancelled was denied by Order of March 17, 2009.  Shen filed a timely Motion for Reconsideration..

## II.     MOTION FOR RECONSIDERATION

Reconsideration serves to correct manifest errors of law or fact.  Harsco Corp. v. Zlotnicki, 779 F.2d 906 (3rd Cir. 1985).  A court should grant a motion for reconsideration only if there is:  1) newly available evidence; 2) an intervening change in controlling law; or 3) a need to correct a clear error of fact or to prevent manifest injustice.  Haymond v. Lundy, 205 F. Supp. 2d 390, 395 (E.D. Pa. 2002).  "Motions for reconsideration are not to be used to reargue or relitigate matters already decided."  Id.

Shen asserts six errors by the court:

1) the court should not have denied its motion for summary judgment on its claim to

---

abandoned under the Lanham Act "[w]hen its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances."  Lanham Act, § 45, 15 U.S.C. § 1127.

cancel the '712 mark as fraudulently procured;
2) the court erred when it stated that RHL submitted an (allegedly) false affidavit to maintain the '712 registration, and not as part of the application for the registration itself;
3) the court should not have denied its motion for summary judgment on its claim to cancel the '522 mark as fraudulently procured;
4) the court should not have denied as moot its motion for summary judgment on its claim to have the '529 registration cancelled as fraudulently procured;
5) the court should not have denied its motion for summary judgment to have the '448, '595, and '268 marks cancelled as abandoned since RHL failed to rebut the prima facie presumption of abandonment after three years of demonstrated non-use; and
6) the court should not have denied its motion for summary judgment to have the '043, '917, and '442 marks cancelled as abandoned, because their use in commerce was <u>de minimis</u>.

### III.    DISCUSSION

#### A.     The '712 Mark

Shen asserts two errors in the Memorandum regarding this mark:  1) the court mischaracterized RHL's June, 2002 statement of use as a filing to maintain the '712 mark when it was actually a statement of use to apply for the mark; and 2) the court should not have denied Shen's motion for summary judgment on its claim to cancel the '712 mark for fraudulent procurement.

RHL first applied for trademark registration no. 2,669,712 (RITZ ESCOFFIER for food products) under § 1(b),[2] 15 U.S.C. § 1051, on April 3, 2000; the PTO issued a notice of allowance on October 23, 2000.  RHL filed a statement in June 2002, that all of the goods associated with the applied-for registration were in use as early as April, 2002; the PTO issued the registration on December 31, 2002.  The court mischaracterized RHL's June, 2002 filing as a filing "to maintain the registration" and not as a § 1(d) statement of use required before the PTO

---

[2] All plain citations in this memorandum to a particular "§" or "section" refer to a provision in the Lanham Act.

would issue a registration applied for on the basis of intent to introduce goods into United States commerce.[3]  (Memorandum, p. 6.)

RHL licensed U.S. Foodservice, Inc. ("USF") to market and sell goods associated with the '712 mark in the United States.  According to Shen, RHL's president tasted and sampled all of the licensed goods and that USF sold no licensed goods without his approval; therefore, RHL had to have known goods actually in use, and goods not in use.  (Shen's Motion for Reconsideration, Memorandum (Paper no. 81, attachment 1, "Moving Brief"), p. 9-10).  RHL, in response, states that RHL approved all the goods USF developed, but "U.S. Foodservice alone decided what to sell or not sell under the RITZ ESCOFFIER trademark after approval was given. . . ."  (RHL's Response to Shen's Motion for Reconsideration (paper no. 90, "Response"), p. 5.)  Shen and RHL also dispute whether RHL received royalty statements prior to June, 2002; such statements, if accurate, would have reflected whether or not goods were in use.  (Id. at 9.)

The court's misstatement regarding the purpose of RHL's June, 2002 statement of use to obtain the '712 registration was not material to the denial of Shen's motion for summary

---

[3]An applicant for a trademark filing under § 1(b) or § 44, 15 U.S.C. § 1051 or § 1126, on the basis of an intent to introduce associated goods into commerce, will not be issued the registration until the PTO is satisfied that the associated goods are actually in use.  Instead (assuming a lack of opposition to the application), the PTO will issue a "notice of allowance," at which point the registrant must then filed a § 1(d) statement of use within six months.  The PTO will not register the applied-for mark until the applicant can demonstrate use of the associated goods in United States commerce sufficient to satisfy the requirements of an application under § 1(a).  Section 1(c-d), 14 U.S.C. § 1051.

RHL applied for the '712 mark in April, 2000 and was sent a notice of allowance in October.  RHL did not send in its § 1(d) affidavit in time, and was only able to finish its application process after petitioning to revive the mark in April, 2002.  RHL substantiated its use of the mark in June, 2002, while waiting for the PTO to rule on its petition to revive the mark.  The PTO granted RHL's petition on September 23, 2002, and the mark was issued shortly thereafter on December 31, 2002. The timeline of RHL's application for the '712 mark can be found at: http://tarr.uspto.gov/servlet/tarr?regser=serial&entry=76015754 .

judgment on its amended counterclaim to cancel that registration. Whether the allegedly fraudulent submission was to acquire rather than maintain the registration, Shen must prove that RHL actually knew or believed its submission to the PTO was false. See Marshak v. Treadwell, 240 F.3d 184, 196 (3rd Cir. 2001).[4]

Determining whether the alleged fraud was committed with scienter depends on evaluating the credibility of evidence; it is normally a question of fact for which resolution at summary judgment is particularly inappropriate. See Justofin v. Metropolitan Life Ins. Co., 372 F.3d 517, 524 (3rd Cir. 2004); Copelands' Enterprises, Inc. v. CNV, Inc., 945 F.2d 1563, 1567 (Fed. Cir.1991).

RHL does not admit that it knowingly filed false affidavits of use before the PTO as part of its application for the '712 mark. The record before the court on summary judgment does not prove beyond dispute that RHL knew, before it filed its statement of use in June, 2002, that USF did not intend to produce all the '712 mark's associated goods as part of its license. Whether RHL's application for the '712 registration was fraudulent remains a question of material fact to be resolved at trial.[5]

---

[4] Shen asserts that the standard for scienter in a claim to cancel a registration as fraudulently procured is that the applicant "should have known" that its submissions were false. See Medinol Ltd., v. Neuro Vasx, Inc., 67 U.S.P.Q. 2d 1205 (T.T.A.B. 2003). Although Marshak predates Medinol, it specifically disapproved of the "should have known" standard, and required proof of a registrant's actual knowledge of or belief in the falsity of a submission to the PTO. Marshak, 240 F.3d at 196. As Judge Baylson observed in a similar case decided recently: 1) "Medinol is not controlling in this action" because Marshak requires proof of actual knowledge or belief; and 2) the registrant in Medinol (unlike RHL) admitted that its statement of use as part of its application was false. Urban Outfitters, Inc. v. BCBG Max Azria Group, Inc., 2007 WL 2463379 at *12, n.9 (E.D. Pa. Aug. 24, 2007).

[5] If, at trial, the '712 registration is found to have been procured through partially fraudulent statements of use, the court will then address whether to follow Medinol and order the

B.     The '522 Mark

Shen asserts two errors in the Memorandum regarding this mark: 1) RHL's § 8 and § 9 statements that the '522 mark was in use on all associated goods were both indisputably fraudulent; and 2) those false submissions to the PTO regarding the '522 mark's use were material to the mark's continued validity.

The court finds no clear errors of fact in the Memorandum's discussion of the '522 mark and RHL's statements of its use on associated goods.  Shen alleged that RHL's statements of use considered pie servers and ladles as the "spatulas, and scoops" listed as goods associated with the '522 mark, even though it knew that the French terms for those items (sold from a French language catalog) are quite distinct.  It remains a material question of fact whether these terms are non-interchangeable so that the PTO would clearly have denied RHL's petitions to maintain and renew the '522 marks were it aware of the alleged inaccuracies in RHL's terminology.

Roux Marquiand, the '522 mark's licensee, "entered liquidation" in January, 2006, five months before RHL filed a statement with the PTO that its mark was in use on all associated goods.  It is not established whether manufacture of the goods had ceased by January, 2006, whether there was inventory waiting to be shipped from France to the United States, or whether there were further sales of the goods within the United States after that time.  On summary judgment, it cannot be decided merely because the licensee entered liquidation that RHL's claim, in June, 2006, that the goods were still in use was not in good faith.[6]  See, e.g. EH Yacht, LLC v.

---

entire registration cancelled..  See Medinol, 67 U.S.P.Q. 2d 1205.

[6]What it means under French law when a retailer "enters liquidation" remains to be determined at trial, by testimony.  See Fed. R. Civ. Pro. 44.1.

Egg Harbor, LLC, 84 F. Supp.2d 556 (D.N.J. 2000) (a boat manufacturer's mark was in use as long as boats bearing the mark were sold, even after the manufacturer entered bankruptcy and ceased production).

Shen's motion to reconsider denial of summary judgment on its claim to cancel the '522 mark for fraudulent procurement will be denied.

  C. **The '529 Mark**

The Memorandum held Shen's claim to cancel the '529 mark was moot after RHL voluntarily withdrew the registration. (Memorandum, p. 1, n. 1.)  Shen asserts that RHL's withdrawal of the registration did not moot either its claim to cancel the registration as fraudulently procured or its fraud claim against RHL in connection with the registration's procurement.

Shen is correct that cancelling the '529 registration did not moot any claim for fraud in connection with that registration. However, Count I of Shen's amended counterclaim was not for fraud, and no fraud claims were discussed in the Memorandum. The Memorandum was correct in holding Shen's claim to cancel the '529 mark was moot; the court's failure to order the PTO to cancel the four registrations voluntarily withdrawn by RHL will be corrected.

  D. **The '448, '595, and '268 Marks**

Shen claims the court should not have denied its motion for summary judgment to cancel these three marks as abandoned, because RHL failed to rebut the Lanham Act's statutory presumption of intent to abandon after three years of non-use. RHL avers that its continued efforts to license goods bearing its marks for sale in the United States, combined with the steady stream of boutique sales of other goods associated with its marks to United States customers

visiting its hotel, proves that it never intended to abandon these marks.

A party asserting a trademark's abandonment must prove:  1) discontinuance of the mark's use; and 2) an intent not to resume use within a reasonably foreseeable time.  <u>Exxon Corp. v. Humble Exploration Co.</u>, 695 F.2d 96 (5th Cir.1983).  A mark is "in use" on an associated good for purposes of the Lanham Act if the use was bona fide in the ordinary course of trade, and not merely to reserve a right in the mark.  Section 45, 15 U.S.C. § 1127.  Three years of non-"use' is prima facie evidence of abandonment; the registrant can rebut the presumed abandonment by evidence of an intent to resume the mark's use.  <u>Id.</u>; 3 McCarthy on Trademarks and Unfair Competition § 17:21 (4th ed., 1999).  Intent to resume a mark's use on an associated good can be inferred from circumstances.  Section 45, 15 U.S.C. § 1127.  Abandonment, being in the nature of a forfeiture, must be strictly proved.  <u>U.S. Jaycees v. Philadelphia Jaycees</u>, 639 F.2d 134, 139 (3rd Cir. 1981).

RHL maintains a boutique in its Paris hotel to sell goods to visitors, including customers from the United States; RHL has also made efforts to license goods bearing its marks for sale in the United States.  It might be reasonably inferred from the evidence of record that RHL had at least some intent to maintain an ongoing presence for its marks in United States commerce, and to resume the use of its marks on goods fallen into disuse.  Whether RHL has a credible intent to resume, in the foreseeable future use, of any of the goods associated with the '448, '595, and '268 marks to the extent they may have fallen into disuse remains a question of fact for trial.  Shen's motion was properly denied as to these marks.

      E.     **The '043, '917, and '442 Marks.**

Shen claims that RHL's use of these marks in United States commerce was <u>de minimis</u> as

a matter of law, and that the court should not have denied its motion for summary judgment to cancel these marks as abandoned. Shen has constructed a table summarizing sales from 2004 through 2006 of individual goods associated with these marks, based on individual invoices of sales at RHL's Paris hotel boutique. (Moving Brief, p. 28.; Shen's Brief for Summary Judgment, Ex. 63.) RHL claims that this table is incomplete, as Shen has not used any RHL internal documents beyond the individual invoices. (Response, p. 9); Shen responds that RHL has not presented its own evidence in rebuttal. (Shen's Motion for Reconsideration, Reply Brief (paper no. 97), p. 11.)

RHL's assertion that it has no intent to abandon these marks raises a question of material fact: whether RHL intends to resume using goods associated with these marks to they extent they may have fallen into disuse. These marks can not be cancelled either entirely or in part at the summary judgment stage. Shen's motion to reconsider its denial of Shen's motion for summary judgment on its claims to have the '043, '917, and '442 marks cancelled will be denied.

## IV. CONCLUSION

Shen's Motion for Reconsideration (paper no. 81) of the court's order of March 17, 2009 (paper no. 79), will be granted in part and denied in part. The court mischaracterized the procedural history of RHL's application for and registration of the '712 mark with the United States Patent and Trademark Office. In all other respects, Shen's Motion for Reconsideration will be denied. The list of claims remaining for trial in this matter remains unaltered.