IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE RITZ HOTEL, LTD. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| SHEN MANUFACTURING CO., INC. | : | 05-4730 |

MEMORANDUM

**NORMA L. SHAPIRO, J.**                                          JUNE 25, 2009

     Plaintiff The Ritz Hotel, Ltd. ("RHL") filed for declaratory relief against Shen Manufacturing Co., Inc. ("Shen") for trademark infringement under the Lanham Trademark Act ("Lanham Act"). Shen filed counterclaims against RHL for trademark infringement and fraud under the Lanham Act together with supplemental state-law claims for fraud and trademark violations. Shen's Motion for Partial Summary Judgment (paper no. 46) as plaintiff on Count IV of its amended counterclaim for trademark infringement, under § 32 of the Lanham Act, 15 U.S.C. § 1114, will be denied.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

     In Count IV of its amended counterclaim, Shen accuses RHL of introducing goods bearing RITZ marks[1] into United States commerce in direct violation of Shen's RITZ mark, registered with the United States Patent and Trademark Office ("PTO") as trademark registration no. 2,288,326 ("the '326 mark"). Shen seeks an order permanently enjoining RHL from using its

---

[1] In addition to United States trademark registration no. 1,980,522 (RITZ for cutlery), RHL possesses numerous United States trademark registrations and common law marks, all containing RITZ, e.g. RITZ PARIS, HOTEL RITZ, RITZ ESCOFFIER, etc. This memorandum will refer collectively to RHL marks as its "RITZ marks."

1

RITZ marks on table and bath linens, and an order denying RHL's declaratory judgment claim.

Shen first applied for the '326 mark on March 18, 1994; the PTO issued the registration on October 26, 1999. The '326 mark, a "standard character mark,"[2] is registered for use on: laundry bags, dish cloths, kitchen towels, bathroom towels, ironing board pads and covers, toaster covers, place mats, napkins, pot holders, oven mitts, and barbecue mitts. Shen has used its RITZ mark on table linens since 1982 and on bath linens since 1990. (Defendant Shen's Memorandum in Support of its Motion for Partial Summary Judgment (paper no. 47, "Memorandum"), exh. 6, p. 6.)

Many RHL sales in the United States, including bath linens (e.g., bathrobes) and table linens (e.g., tablecloths), are by mail-order to former guests at its Paris hotel. Since 1984, RHL has also had a United States office, sought licensees to manufacture and distribute RITZ goods, and sold goods (crystal, silver, and gourmet food products) through retailers such as Saks Fifth Avenue, Bergdorf Goodman, Marshall Field's, and Nordstrom. Declaration of Carole Francesca, (paper no. 55, "Francesca"), p. 4; see The Ritz Hotel Limited v. Ritz Closet Seat Corp., 17 U.S.P.Q. 2d 1466 (T.T.A.B. 1990). Fabricut, Inc., a different licensee, also markets RITZ marks on luxury design fabrics to interior design specialists in the United States. (Francesca, p. 4.) Shen does not aver that RHL has sold bath and table linens bearing RITZ marks to consumers in the United States by any means other than mail order, nor does it aver more than speculation of

---

[2]The Trademark Manual of Examining Procedure ("TMEP") uses the term "standard character mark" to describe marks only composed of standard characters, i.e., words without stylized typefaces or accompanying images. "Typed drawing," also used to describe character-only marks, is no longer the official name for that species of mark; the '326 mark was registered as a typed drawing, but it would now be registered as a standard character mark. TMEP § 807.03. Many of RHL's RITZ marks are also standard character marks.

any plans by RHL to do so in the future through directly competing channels of trade.

## II.   SUMMARY JUDGMENT

Before the court is Shen's Motion for Partial Summary Judgment on Count IV of its amended counterclaim for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114(1).  Shen claims that RHL has engaged and will continue to engage in trademark infringement by using its RITZ marks on bath and table linens in United States commerce.[3]

A motion for summary judgment is granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving no genuine issue of material fact exists.  Matsushita v. Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 n. 10 (1986); Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996).  A party opposing summary judgment must do more than rest upon mere allegations, general denials, or vague statements.  See Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 889, 890 (3rd Cir. 1992).  There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

---

[3]Section 32, 15 U.S.C. § 1114 provides:
(1) Any person who shall, without the consent of the registrant—
    (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .
    . . . .
shall be liable in a civil action by the registrant for the remedies hereinafter provided.

**III.   DISCUSSION**

To prevail on its counterclaim for trademark infringement under the Lanham Act, Shen must show that: 1) it owns the '326 RITZ mark; 2) the mark is valid and legally protectable; and 3) RHL use of its RITZ marks on bath and table linens is likely to create confusion with Shen's RITZ-branded goods associated with its '326 mark.  Checkpoint Systems, Inc. v Check Point Software Technologies, Inc., 269 F.3d 270, 279 (3rd Cir. 2001).  RHL does not contest either the ownership or validity of Shen's '326 mark with regard to its associated goods; the issue is whether RHL's use of its RITZ marks on table and bath linens is likely to create confusion with Shen goods associated with the '326 mark.

Shen seeks an order permanently enjoining RHL from using any of its RITZ marks on bath and table linens in United States commerce.  The factors to be considered in deciding whether to grant a permanent injunction in Lanham Act trademark cases are: 1) whether Shen prevails on the merits; 2) whether Shen would be irreparably harmed without the injunction; 3) whether granting the injunction would harm RHL less than denying the injunction would harm Shen; and 4) whether the injunction is in the public interest.  Shields v. Zuccarini, 254 F.3d 476, 482 (3rd Cir. 2001).  If Shen can not prevail on its claim by demonstrating ongoing injury from trademark infringement, it must at least show an imminent likelihood of harm from consumer confusion.  Speculation about possible future trademark infringement is not an adequate basis for injunctive relief in an infringement action under the Lanham Act.  4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition ("McCarthy") § 30:10 (4th ed. 2009).

Shen pleads "direct confusion" and "reverse confusion."

4

    **A.    Direct Confusion**

Shen alleges that RHL is seeking to cause confusion in the minds of potential Shen consumers by marketing its own RITZ-branded linens in direct competition. According to Shen, consumers who see RHL table and bath linens for sale in the United States and purchase them will be confused and think they were manufactured by Shen or with Shen's permission.

"Direct confusion" (also known as "forward confusion") occurs when a consumer sees a non-registrant's goods and believes that they are goods of the registrant.[4] See Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 470 (3rd Cir. 2005). The non-registrant's goods can be in direct competition with the registrant's goods if they are the same or highly similar, marketed at similar price levels and through similar commercial channels. An issue in any trademark infringement claim is whether the relevant consumer is likely to confuse the goods of the non-registrant with those of the registrant. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 212-13 (3rd Cir. 2000).

Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3rd Cir. 1983), lists ten factors for analyzing a direct confusion claim involving non-competing goods. A & H Sportswear applies the Lapp factors to claims involving directly competing goods as well.

> A district court should not be foreclosed from using any factors that it deems helpful in analyzing whether a likelihood of confusion exists between given products, whether or not they directly compete. Lapp's suggestion that, for competing goods, the court need rarely look beyond the mark itself may be an

---

[4]Although RHL possesses common-law RITZ, RITZ PARIS, and HOTEL RITZ trademarks which it has sought to use on table and bath linens, RHL does not currently possess a United States trademark registration for goods similar to those sold by Shen under its '326 mark. RHL may have used its marks on table and bath linens longer than Shen has, but in analyzing a Lanham Act claim for trademark infringement, RHL has no federal registration. RHL is a "non-registrant" in analyzing Shen's counterclaim for Lanham Act trademark infringement.

>   exercise in unjustified optimism; cases are often not easy, and courts will frequently need help in sorting out the likelihood of confusion. . . .
>   . . . .
>   [We] conclude that the Lapp factors should be used for competing and for noncompeting goods.

A & H Sportswear, 237 F.3d at 212-13 (internal quotations and citations omitted).

The Lapp factors are:

  1) the degree of similarity between the marks;
  2) the strength of the registrant's mark;
  3) the price of the goods and other factors indicative of the care and attention expected of the goods' relevant consumers when making a purchase;
  4) the length of time the marks have coexisted in the same market without evidence of actual confusion arising;
  5) the non-registrant's intent in adopting the mark;
  6) evidence of actual confusion, if any;
  7) whether the goods are marketed through the same commercial channels and advertised through the same media;
  8) the extent to which the goods are targeted to the same potential consumers;
  9) the relationship of the goods in the minds of a consumer, whether because of the near-identity of the products, the similarity of function, or other factors;
  10) other facts suggesting that a consumer might expect the registrant to manufacture both products, or expect the registrant to manufacture a product in the non-registrant's market, or expect that the registrant is likely to expand into the non-registrant's market.

A & H Sportswear, 237 F.3d at 215 (citing Lapp, 721 F.2d at 463).

  **1. Similarity**

The marks both contain the word RITZ and are sufficiently similar to support a jury finding that confusing the two is likely. When the dominant portions of the marks are the same and the overall impression the marks create is the same, the marks are probably confusingly similar. Checkpoint Systems, 269 F.3d at 281. The importance of the other Lapp factors remains undiminished, but the similarity of the marks becomes more important in determining likelihood of confusion when the goods are in direct competition, as Shen alleges in this case. A

& H Sportswear, 237 F.3d at 214.

However, the similarity of the Shen and RHL RITZ marks remains a question of material fact. The RHL standard character marks which would be used on bath and table linens are all compounds, e.g. RITZ PARIS, RITZ ESCOFFIER, HOTEL RITZ;[5] the evidence before the court does not demonstrate conclusively that consumers would ignore everything but the "Ritz" in any of those marks and confuse them with Shen's. Furthermore, even if RHL and Shen RITZ marks were identical as a matter of law, the other Lapp factors do not support Shen's infringement claim beyond material dispute.

   **2.     Strength**

Shen asserts that its RITZ mark is arbitrary for bath and table linens, strong, and subject to a wide scope of protection from infringement from RHL RITZ marks. According to Shen, it is indisputable that a consumer seeing Shen and RHL bath or table linens for sale next to each other would think that both were made by Shen. Shen cites sales figures, advertising expenses, and a trade magazine survey describing it as the third largest supplier of kitchen textiles in the United States in 2004. (Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment (paper no. 60, "Reply"), p. 10-11.) RHL asserts that Shen's RITZ mark is

---

[5] The only RHL RITZ "standard character" marks which are nothing but "Ritz" are trademark registration nos. 1,980,522 (RITZ for cutlery) and 3,244,080 (RITZ for champagne). Shen does not aver any present efforts on RHL's part to register any other standard character marks formed only of the word "Ritz."

RHL has twice applied for a RITZ PARIS standard character mark for bath linens. RHL filed application no. 76/346,842, on December 10, 2001, for a RITZ PARIS mark for use on "[b]ath linens, wash cloths and bath towels; terry cloth hand towels; wash gloves; table linens, namely, tablecloths, napkins, table runners; hand towels made of textiles." This application has since been abandoned. RHL filed application no 78/291,147, on August 22, 2003, for a RITZ PARIS mark for use on "[b]ath linen, namely, bath towels, bath sheets, hand towels, toweling mitts." This application is still live.

much weaker than its RITZ marks; it cites one expert opinion that if Shen's mark is strong, it is only strong for kitchen textiles, not bath and table linens. (Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment (paper no. 50, "Opposition"), p. 8-9.)

The term "strength" applied to trademarks refers to the distinctiveness of the mark, its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source. McGregor-Doniger, Inc. v. Drizzle, Inc., 599 F.2d 1126, 1131 (2d Cir. 1979). The more distinctive, unique and well-known the mark, the deeper is the impression it creates upon the public consciousness and the greater the scope of protection from encroachment to which it is entitled. Family Circle, Inc. v. Family Circle Associates, Inc., 332 F.2d 534, 540 (3d Cir. 1964). A mark's strength is a function of its "conceptual strength" or distinctiveness, and its "commercial strength" or marketplace recognition. A & H Sportswear, 237 F.3d at 221. These are fact-based determinations. Id.

Trademarks are classified in four categories according to degrees of conceptual strength: 1) generic (e.g., DIET CHOCOLATE FUDGE SODA or ASPIRIN); 2) descriptive (e.g., SECURITY CENTER); 3) suggestive (e.g., COPPERTONE); and 4) arbitrary or fanciful (e.g., KODAK). A & H Sportswear, 237 F.3d at 221. A term is generic if it functions as the common descriptive name of a class of products. A.J. Canfield Co. v. Honickman, 808 F.2d 291, 297 (3rd Cir. 1986). A descriptive term used as a mark conveys an immediate sense of the ingredients, qualities, or characteristics of goods bearing that mark. Id. A suggestive mark requires consumer imagination, thought, or perception to determine what the product is. Id.. An arbitrary or fanciful mark bears no logical or suggestive relation to the actual characteristics of the goods bearing the mark. Id.. at 296.

Generic marks receive no trademark protection; "indeed, they are not trademarks at all." A & H Sportswear, 237 F.3d at 222 (citation omitted). Descriptive marks are only protected if they have a "secondary meaning," i.e., the general public views the mark as an identification not only of the product but of its source. Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1228 (3rd Cir.1978).

A mark's descriptiveness, suggestiveness, or arbitrariness is not dispositive of whether it receives trademark protection. A & H Sportswear, 237 F.2d at 222. A suggestive, arbitrary or fanciful mark can be weak if its distinctiveness becomes diluted through use on a wide variety of goods so that the mark's presence on a particular good does not suggest a single source to the consumer. Id. (citing "Arrow" and "Esprit" as non-descriptive marks weakened by wide circulation). If a consumer is aware that "Ritz" is used on a wide variety of products and services from many sources, that consumer will be less likely to assume that two products, each bearing RITZ marks, come from the same source. Id. at 223.

The stronger two marks are by comparison to one another, the less likely a consumer is to be confused. If both Shen and RHL are well known among the consuming public for RITZ marks and any associations that might go with them, their goods are unlikely to be confused even if their marks are almost identical.

Assuming RITZ is neither generic nor descriptive without secondary meaning,[6] it is not indisputable on the record now before the court that Shen's RITZ mark is so much stronger than

---

[6]This assumption may be incorrect. RITZ as a term may be at least descriptive with secondary meaning as used on crackers, tour buses and camera services, for example, but may not have secondary meaning as used on either party's goods. The parties must address whether RITZ as a standard character format mark is protectable at all or has become generic and/or descriptive without secondary meaning.

RHL's that a consumer faced with RHL and Shen RITZ-branded towels and tablecloths side by side would think that both of them were made by Shen.[7]  Shen's advertising expenses, breadth of sales, and reputation within its industry are important factors suggesting the '326 mark's strength, but are not conclusive on a consumer's subjective awareness of the distinctiveness of Shen's mark in comparison with that of RHL.  An expert opinion suggests that the Shen RITZ mark is only strong for kitchen textiles.  The actual strength of Shen and RHL RITZ marks relative to each other on bath and table linens, in terms of their distinctiveness and commercial recognition, is a question of material fact for a jury.

### 3. The Price Points At Which, the Channels Through Which, and the Consumers to Whom the Goods are Sold

The Ritz Hotel has long been associated worldwide with luxury; it seeks to market its products to consumers attracted to its "image of consummate elegance and luxurious living." (Opposition, p. 12).  When RHL seeks to market its goods through commercial channels (as opposed to direct sales through mail order to former guests of the Ritz Paris Hotel), it prefers higher priced merchants such as Saks Fifth Avenue and Bergdorf Goodman. (Opposition, p. 11; Francesca, p. 4.)[8]

Shen's RITZ mark is not a luxury brand.  (Francesca, p. 4.)  Typical channels of sales and

---

[7]Products do not need to be sold side by side for a plaintiff to show a likelihood of confusion as to their source; it is sufficient for the consumer to be aware of one of the marks when presented with goods bearing the other.  See Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc., 680 F.2d 891, 893 (2nd Cir. 1982).  If the marks are close enough in strength that the consumer would not confuse their source even when their goods were displayed side by side, then the consumer is unlikely to be confused when seeing the goods individually.

[8]RHL has also sold goods through Marshall Field's and Nordstrom in the past.  See The Ritz Hotel Limited v. Ritz Closet Seat Corp., 17 U.S.P.Q. 2d 1466 (T.T.A.B. 1990).  RHL does not aver that it continues to sell goods through these stores.

distribution for Shen table and bath linens are department stores, e.g., Bloomingdale's, Macy's, Target, and Big Lots, or household goods stores, e.g., Sur La Table, Bed, Bath, and Beyond, and the Kitchen Collection. (Memorandum, p. 20.)

The attempt by RHL to have Bed, Bath, and Beyond sell its table and bath linens was a major impetus for the present litigation. (Memorandum, p.6; id., ex. 1, p. 12.) RHL maintains that is no longer seeking such an arrangement. Even had it entered a distribution agreement with Bed, Bath, and Beyond, its goods would have been sold at much higher price levels than the retailer normally sells similar goods. (Transcript of May 5, 2008 Hearing (paper no. 75), p. 77-78). RHL also would not have permitted Bed, Bath, and Beyond to apply 20% discount coupons to RHL products. Id. Shen insists that RHL will make concerted efforts in the future to compete directly with Shen in the same stores and for the same consumers. (Reply, p. 11; see infra, part III.A.5.)

Different price points make confusion less likely, because the parties' goods will be purchased by different classes of consumers. 4 McCarthy 24:52. If one party's goods are sold through top-tier stores while the other party's goods are sold through mass market retailers, the intended consumers are different and confusion is less likely. See e.g., Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L., 673 F. Supp. 1238, 1244 (S.D.N.Y. 1987). More expensive goods are also less likely to be impulsive purchases. See Checkpoint Systems, 269 F.3d at 285. See also Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1206 (1st Cir. 1983) ("[T]here is always less likelihood of confusion where goods are expensive and purchased after careful consideration."); Beer Nuts, Inc. v. Clover Club Foods Co., 711 F.2d 934, 941 (10th Cir.1983) ("Buyers typically exercise little care in the selection of

11

inexpensive items that may be purchased on impulse.").

Shen has not demonstrated that its goods bearing the '326 mark and RHL's bath and table linens are being marketed, or are likely to be marketed imminently, through the same stores, at similar price levels, to the same consumers. RHL may have explored the possibility of marketing its bath and table linens in the United States through one of Shen's main retail channels, but it avers no present plans for such an arrangement. RHL prices its goods at a higher level than Shen,[9] so that purchases of RHL goods may be less impulsive than purchases of Shen goods. RHL and Shen channels of trade, pricing practices, and intended consumers do not conclusively demonstrate that there is likely to be consumer confusion if their respective marks used on table and bath linens.

### 4.     The Marks' Coexistence Without Confusion

Both the Ritz Hotel and the Ritzenthaler brand of kitchen textiles (whose RITZ mark is now owned and marketed by Shen) predate the 20th century. See Shen Mfg. Co., Inc. v. Ritz Hotel, Ltd., 393 F.3d 1238, 1239-40 (Fed. Cir. 2004). Shen has used its RITZ mark on table linens in the United States since 1982 and on bath linens since 1990. RHL may not have sold either bath or table linens bearing its RITZ marks to United States consumers other than by direct

---

[9]Shen presents numerous examples of the price points RHL typically targets for its goods: €148 for a bathrobe; €38.29 for a chef's apron; €252 for a satin bed comforter; €34.30 for a 24m Ritz pink t-shirt; €22.90 for a pair of woman's slippers; €22.90 for an Escoffier whisk key chain; and €35 for a pink tablecloth. (Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment (paper no.60), Ex. 63, RHL pp. 002658, 002682, 002699, 002768, 002771, 002801, and 002809, respectively.) These prices were for direct mail-order sales by the Ritz Paris hotel boutique.

These prices are in Euros; the Dollar to Euro exchange rate was $1.3764 on May 20, 2009. The Dollar's value against the Euro has ranged over the last five years from $1.1679 on November 18, 2005 to $1.5990 on July 5, 2008. "ECB: Euro exchange rates USD 20 May 2009", at http://www.ecb.int/stats/exchange/eurofxref/html/eurofxref-graph-usd.en.html .

mail order, but RHL has sold other luxury goods in specialty stores in the United States, including Bergdorf Goodman, Saks Fifth Avenue, Marshall Field's, and Nordstrom, as early as 1984.

"If a defendant's product has been sold for an appreciable period of time without evidence of actual confusion, one can infer that continued marketing will not lead to consumer confusion in the future.  The longer the challenged product has been in use, the stronger this inference will be."  Versa Products Co., Inc. v. Bifold Co. (Mfg.) Ltd., 50 F.3d 189, 205 (3rd Cir.1995).  Despite the long coexistence of Shen and RHL RITZ marks, Shen has not yet presented evidence of any actual confusion between its bath and table linens and those of RHL.  RHL's negotiations with Bed, Bath, and Beyond did not result in an agreement and there is no evidence of any other prior or pending agreements RHL might have with retailers in the United States who sell Shen's bath and table linens.

RHL bath and table linens are not widely available in the United States, but that does not mean the associational aura of RITZ marks has not coexisted with that of Shen's in the minds of potential consumers.  RHL's reputation for luxury and high-quality goods and service is known to their sophisticated consumers in the United States, and it has sold goods bearing RITZ marks through stores in the United States as early as 1984 in addition to its ongoing mail order sales directly from its Paris hotel boutique.  A jury may find that confusion is likely if the parties' goods were to coexist in greater market proximity to each other than they have thus far, but the record at present does not suggest that will be the case.

### 5. RHL's Intent in Adopting the RITZ Mark on Bath and Table Linens and Other Facts Suggesting Possible Confusion

Shen claims that RHL has demonstrated its clear intent to cause confusion with regard to Shen's bath and table linens.  According to Shen, RHL knew that Shen owned the '326 mark but went ahead and applied to the PTO to register RITZ marks for use on both bath and kitchen linens.[10]  RHL's wrongful intent to confuse consumers was documented during its negotiations with Bed, Bath, and Beyond, when RHL held "lengthy discussions . . . about an indemnity regarding Shen's rights."  (Reply, ex. 42.)  Shen also asserts that RHL's filing intent-to-use applications for trademarks it never intended to use to foreclose Shen from filing its own registrations, is also evidence of the wrongful intent of RHL.  (Reply, p. 12.)

RHL argues that: 1)  its decision to market bath and table linens branded with its RITZ marks was the natural outgrowth of its desire to capitalize on the Ritz Paris Hotel's worldwide association with luxury; and 2) it never purposefully intended to manipulate its mark to resemble Shen's.  (Opposition, p. 11).

The court's essential inquiry in a Lanham trademark infringement case is whether relevant consumers subjectively are likely to be confused about the source of particular goods.  Proof of a non-registrant's intent to cause consumer confusion is only relevant to this inquiry when it supports an inference of likely confusion.  See 4 McCarthy, § 23:110.  The non-registrant must intend to confuse the consumer as to the source of its goods; intent merely to copy the registrant's mark is not enough to support an inference of confusion.  A & H Sportswear, 237 F.2d at 225-26.  As Judge Jerome Frank wrote, "an intent to do a wrong cannot [by itself]

---

[10]RHL has applied twice for a RITZ PARIS mark for use on bath linens.  See supra n. 5.

transmute a lawful into an unlawful act." Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-LeCoultre Watches, Inc., 221 F.2d 464, 467 (2nd Cir. 1955).

RHL does not acknowledge an intent to counterfeit Shen's RITZ mark on its bath and table linens in order to confuse consumers; RHL's intent depends on issues of disputed material fact. Evidence that RHL knew about Shen's trademark rights when it negotiated with Bed, Bath, and Beyond, together with Shen's other allegations of RHL bad faith conduct before the PTO, if substantiated, could convince a jury that RHL intended to cause consumer confusion. However, Shen's evidence at the summary judgment stage does not prove beyond dispute RHL intent to cause consumer confusion.

### 6. Totality of Lapp Factors

The evidence before the court on summary judgment does not show, beyond dispute, a likelihood of direct confusion between RHL RITZ-branded bath and table linens with those marketed and sold with Shen's '326 RITZ mark. The marks all contain the word RITZ and may be similar enough to confuse, but not much else about them is so clear cut. RHL and Shen market their linens mostly to different consumers through different channels of trade. Consumers do not necessarily view their RITZ marks as indisputably linked, nor do their marks automatically generate the same associations in consumers' minds. Shen has not demonstrated, beyond question, RHL's deliberate intent to introduce RITZ-branded bath and table linens in order to cause confusion among Shen's potential consumers. Shen and RHL RITZ marks have coexisted in United States commerce for a long time with little if any confusion between them. Shen may be able to prove direct confusion at trial, but it has not yet done so with the degree of certainty necessary to prevail as counterclaim plaintiff on a motion for summary judgment.

### B. Reverse Confusion

In the alternative, Shen alleges "reverse confusion" trademark infringement by RHL, i.e., RHL, a non-registrant, is seeking to flood Shen retailers with its bath and table linens and to use RITZ world renown and reputation for luxury to make Shen's goods appear counterfeit.

Trademark infringement by "reverse confusion" occurs when a larger, more powerful junior registrant or non-registrant with a stronger mark floods the relevant market with its own goods so that a potential consumer believes the less powerful or well-known senior registrant goods are counterfeit. Freedom Card, 432 F.3d at 471-72. Shen claims RHL is seeking to wield the greater strength and known association with luxury of its marks in order to overwhelm Shen's weaker but senior RITZ mark in the minds of consumers.

Judge Becker, in A & H Sportswear, modifying the Lapp factors for direct confusion, suggested these indicia of reverse confusion:

1) the degree of similarity between the marks;
2) the strength of the two marks, weighing both a commercially strong non-registrant's mark and a conceptually strong registrant's mark in the registrant's favor;
3) the price of the goods and other factors indicative of the care and attention expected of the goods' relevant consumers when making a purchase;
4) the length of time the marks have coexisted in the same market without evidence of actual confusion arising;
5) the non-registrant's intent in adopting the mark;
6) evidence of actual confusion, if any;
7) whether the goods are marketed through the same commercial channels and advertised through the same media;
8) the extent to which the goods are targeted to the same potential consumers;
9) the relationship of the goods in the minds of a consumer, whether because of the near-identity of the products, the similarity of function, or other factors;
10) other facts suggesting that a consumer might expect the larger, more powerful non-registrant to manufacture both products, or expect the non-registrant to manufacture a product in the registrant's market, or expect that the non-registrant is likely to expand into the registrant's market.

A & H Sportswear, 237 F.3d at 234.

All but factors no. 2 and no. 10 are identical to Judge Becker's list of factors suggesting direct confusion. The change between the lists reflects the difference between analyses of direct and reverse confusion: a reverse confusion analysis starts with the premise that the registrant and its mark are weaker and focuses instead on the strength of the non-registrant's mark. Checkpoint Systems, 269 F.3d at 303. Direct confusion and reverse confusion analyses are otherwise identical: a claim for direct confusion attenuates significantly if the two companies' goods are not marketed at the same price levels and through the same channels of trade, or if relevant consumers do not view the companies' goods as similar to each other; so does a claim for reverse confusion. Id., 269 F.3d at 304.

Shen, as counterclaim plaintiff, is not entitled to summary judgment for reverse confusion, because the strengths of Shen and RHL RITZ marks for table and bath linens are questions of material fact. Even if Shen's mark is weaker, it has not shown beyond material dispute that table and bath linens associated with its '326 mark are in direct competition with RHL RITZ-branded table and bath linens, are sold through the same commercial channels at similar prices, or marketed to the same consumers. It matters little which is the stronger or weaker mark if the same consumers do not see the parties' goods sold together or associate the parties' goods with each other.

Shen does not show any plans by RHL to sell its goods in the near future through any of the retail channels Shen normally uses. Even if RHL were to enter a marketing arrangement with Bed, Bad, and Beyond or another Shen retailer, Shen has not proven conclusively that likely consumers would view its goods and its marks as those of RHL. Shen's claim for reverse

17

confusion, like its claim for direct confusion, is not amenable to resolution by summary judgment.

## IV.   CONCLUSION

Questions of material fact prevent the court from ruling on Shen's counterclaim against RHL, for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114(1), prior to trial.  The record before the court on summary judgment does not show beyond dispute that relevant consumers are likely to confuse sources of table and bath linens branded with any of RHL RITZ marks with goods sold by Shen under its '326 mark.  If Shen prevails at trial by proving ongoing or imminent trademark infringement, the court will consider the other three factors determining whether to grant Shen permanent injunctive relief.  For now, Shen's Motion for Partial Summary Judgment as plaintiff on Count IV of its amended counterclaim will be denied.

The RHL claim for declaratory relief and the following of Shen's counterclaims remain for trial:  Count I, for cancellation of nine RHL United States trademark registrations;[11] Count IV, for infringement of Shen trademark registration no. 2,288,326, under § 32 of the Lanham Act, 15 U.S.C. § 1114; and Count V, for unfair competition and infringement of Shen common-law marks, under § 43, 15 U.S.C. § 1125.[12]

---

[11]See the court's Order of March 18, 2009 (paper no. 79) for a list of remaining RHL registrations against which Shen still has cancellation claims.

[12]Counts II and VI, state law claims for fraud and trademark infringement, were severed and stayed by the court's Order of December 19, 2008 (paper no. 77).  Count III was dismissed in its entirety by the court's Memorandum and Order of March 10, 2009 (paper no. 78) and by the court's Order of April 27, 2009 (paper no. 93).