# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE RITZ HOTEL, LIMITED,

*Plaintiff,*

vs.

SHEN MANUFACTURING COMPANY, INC.,

*Defendant.*

Civil Action

05-CV-04730 (NS)

November 2, 2009

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
## *IN LIMINE* TO EXCLUDE TESTIMONY OF GARY KRUGMAN

MONTGOMERY, MCCRACKEN,
 WALKER & RHOADS LLP
Christopher Scott D'Angelo
123 South Broad Street
Philadelphia, Pennsylvania 19109
(215) 772-7397

DORSEY & WHITNEY LLP
Bruce R. Ewing
Lile Deinard
250 Park Avenue
New York, New York 10177
(212) 415-9200

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP
Mitchell R. Schrage
R. Tali Epstein
1633 Broadway
New York, New York 10019
(212) 506-1700

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT

      THE COURT SHOULD EXCLUDE
      KRUGMAN'S TESTIMONY IN ITS ENTIRETY .......................................... 2

    A.   Krugman's Testimony Is Primarily Concerned with Legal Opinions
        Or the Applications of His View of the Law to His Assumed Facts .......................... 3

    B.   Portions of Krugman's Opinions Are Irrelevant
        to the Issues Remaining for Trial ............................................................................ 7

CONCLUSION ............................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Berckely Inv. Group Ltd. v. Colkitt,*
   455 F.3d 195 (3rd Cir. 2006) ...........................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ..........................................................................................................2

*Earle M. Jorgensen Co. v. T.I. United States Ltd.,*
   Civ. Act. No. 90-2024, 1992 WL 331466 (E.D. Pa. Nov. 3, 1992)..........................3

*In re Bose Corp.,*
   580 F.3d 1240 (Fed. Cir. 2009) .......................................................................................6

*Kumho Tire Co., Ltd. v. Carmichael,*
   526 U.S. 137 (1999) ..........................................................................................................2

*L.D. Kichler Co. v. Davoil,*
   192 F.3d 1349 (Fed. Cir. 1999) .......................................................................................6

*Marshak v. Treadwell,*
   240 F.3d 184 (3rd Cir. 2001) ......................................................................................5, 6

*Medinol v. Neuro Vasx, Inc.,*
   67 U.S.P.Q. 2d 1205 (T.T.A.B. 2003) ...........................................................................6

*Metro Traffic Control v. Shadow Network,*
   104 F.3d 336 (Fed. Cir. 1997)..........................................................................................5

*Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.,*
   No. 04-754(JCL), 2006 WL 3041097 (D.N.J. Oct. 26, 2006) ..................................2

*Pharmacia Corp. v. Par Pharmaceutical, Inc.,*
   Civ. Act. No. 01-6011 (SRC), 2004 WL 5614917 2 (D.N.J. Feb. 18, 2004) ..........3

*Smith Int'l, Inc. v. Olin Corp.,*
   209 U.S.P.Q. 1033 (T.T.A.B. 1981) ...............................................................................5

*The Basketball Mktg. Co. v. Steve and Barry's University Sportswear,*
   Civ. Act. No. 07-716, 2008 WL 5586141 (E.D. Pa. June 30, 2008) ........................3

*U.S. Search, LLC v. US Search.com, Inc.,*
   300 F.3d 517 (4th Cir. 2002) ...........................................................................................1

*U.S. v. Leo,*
   941 F.2d 181, 196 (3rd Cir. 1991) ..................................................................................2

**STATUTES**

15 U.S.C. §§ 1051(a) and (b) ..................................................................................7

15 U.S.C. § 1058 ..............................................................................................6, 8

15 U.S.C. § 1059 ..................................................................................................8

15 U.S.C. § 1126 ..................................................................................................7

**RULES AND REGULATIONS**

Fed. R. Evid. 402 ...............................................................................................2, 9

Fed. R. Evid. 403 ...............................................................................................2, 9

Fed. R. Evid. 702 ...............................................................................................2, 9

Fed. R. Evid. 704 ...............................................................................................2, 9

37 C.F.R. § 2.161(f)(2) .........................................................................................8

37 C.F.R. § 2.166 ..................................................................................................8

*Trademark Manual of Examining Procedure* (6th) § 1604.11 .......................................8

**OTHER AUTHORITIES**

3 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 702[02] ...................................2

## PRELIMINARY STATEMENT

Plaintiff, The Ritz Hotel, Limited ("RHL"), moves pursuant to Rules 402, 403, 702 and 704 of the Federal Rules of Evidence for an order *in limine* excluding from evidence in their entirety the expert opinions of Gary Krugman, a lawyer and former member of the Trademark Trial and Appeal Board (the "TTAB") of the U.S. Patent & Trademark Office (the "PTO"). Krugman has been engaged by defendant-counterclaimant Shen Manufacturing Company, Inc. ("Shen") to offer his expert opinion that various RHL trademark registrations should be cancelled on the grounds of abandonment and fraud based on his reading of the applicable law. Copies of the May 18, 2006 Expert Report of Gary Krugman and the July 21, 2006 Supplemental Expert Report of Gary Krugman, which are identified on Shen's trial exhibit list as Exhibits 90 and 91, are attached as Exhibits A and B.[1] (Krugman's complete deposition transcript, with exhibits, is Shen Trial Exhibit 17.)

The Court should exclude Krugman's opinions for multiple reasons. First, the vast majority of his proposed testimony consists of legal conclusions (some of which are totally incorrect) or the application of his view of the law to what he assumes (wrongly, in some cases) are the facts of this case. Such testimony improperly usurps the role of the trier of fact and attempts to define the law of the case, and it is for this very reason that Krugman's testimony has been excluded in at least one other trademark action. *See U.S. Search, LLC v. US Search.com, Inc.*, 300 F.3d 517, 522 (4th Cir. 2002) (affirming exclusion of Krugman testimony that was "nothing more than a legal opinion and was thus inadmissible"). Second, some portions of his testimony are irrelevant because certain of the RHL trademark registrations about which he plans to opine have lapsed since his opinions were rendered. Third, other portions of his opinions are

---

[1] Krugman's opinions are, as far as RHL understands, limited to the issues of fraud and abandonment that are to be tried during the second phase of the upcoming trial of this action.

irrelevant because they concern legal matters that have no bearing on this case.  As a result, this Court should reach the same conclusion as in the *U.S Search* case and bar Krugman's testimony from being presented at trial.

## ARGUMENT

## THE COURT SHOULD EXCLUDE KRUGMAN'S TESTIMONY IN ITS ENTIRETY

In accordance with the decisions of the Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594-95 (1993), as well as Fed. R. Evid. 403, 702 and 704, a district court has an obligation to act as a gatekeeper to ensure the reliability and relevancy of expert testimony presented at trial. Rule 702 provides the criteria courts must apply and requires that the expert's testimony aid or assist the trier of fact to determine a fact in issue; that the witness be qualified by experience, training, or education; that the testimony be based on sufficient facts or data; that the testimony be reliable; and that the witness apply the principles and methods to the facts of the case. Whether expert testimony will assist the trier of fact goes primarily to relevance. *Daubert*, 509 U.S. at 591.  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, not helpful." 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 702[02], p. 702-18.

With respect to testimony concerning matters of law, "the Court of Appeals for the Third Circuit has explicitly held that 'it is not permissible for a witness to testify as to the governing law' . . . or as to legal conclusions." *Pfizer Inc. v. Teva Pharmaceuticals USA, Inc.*, No. 04-754(JCL), 2006 WL 3041097 at *2 (D.N.J. Oct. 26, 2006) (citing *U.S. v. Leo*, 941 F.2d 181, 196 (3rd Cir. 1991), *Berckely Inv. Group Ltd. v. Colkitt*, 455 F.3d 195, 218 (3rd Cir. 2006)).  Courts in this Circuit have repeatedly excluded testimony of the sort Krugman proposes to offer at trial, in which the expert opines on the controlling law or applies his or her view of the law to the facts.

Such testimony usurps the role of the trier of fact and is impermissible.  *See The Basketball Mktg. Co. v. Steve and Barry's University Sportswear*, Civ. Act. No. 07-716, 2008 WL 5586141 at *1 n. 2 (E.D. Pa. June 30, 2008) ("Here, defendant's expert is expected to testify about copyright and trademark law as it applies to the facts of this case, including, for example, whether Plaintiff has standing to bring its copyright infringement claims.  Since such matters are legal conclusions for the Court to determine at trial, Mr. Pokotilow's testimony is inadmissible."); *Pharmacia Corp. v. Par Pharmaceutical, Inc.*, Civ. Act. No. 01-6011 (SRC), 2004 WL 5614917 at *2 (D.N.J. Feb. 18, 2004) (excluding expert testimony of patent lawyer concerning legal issues to be resolved at trial); *Earle M. Jorgensen Co. v. T.I. United States Ltd.*, Civ. Act. No. 90-2024, 1992 WL 331466 at *1 (E.D. Pa. Nov. 3, 1992) ("The reports of both expert witnesses are replete with legal conclusions and with applications of law to the facts of this case.").

A.   Krugman's Testimony Is Primarily Concerned
     With Legal Opinions or the Applications of His View of the Law to His Assumed Facts

Krugman's two reports make no effort to camouflage the fact that they are concerned with articulating his view of the applicable law with regard to fraud and abandonment, and then applying that view to what he contends the relevant facts are.  Among the many other passages that make this clear are the following:

- It is also my intention to testify on the issue of fraud on the PTO, specifically, what constitutes fraud in the obtaining and/or maintaining of a federal trademark registration. Krugman Report, Exh. A at ¶ 18.

- If, at the time the Declaration of Continued Use is filed, the registered mark is not currently in use on all of the goods listed in the registration, the registration owner must delete the goods not in use from the registration. *Id.*, ¶ 26.

-   As a general proposition, fraud on the PTO involves a false representation of a material fact which the person either knows or should know is false and which representation is relied upon by the PTO to either allow the registration to issue or to allow the registration to be maintained. *Id.*, ¶ 28.

-   It appears clear, after the TTAB decision in the *Medinol* case, *supra*, that explanations of misunderstanding, mistake, oversight etc. will not avoid a fraud finding where a Statement of Use or post-registration Declaration of Continued Use misstates the goods in connection with which the mark is used and that if fraud is found even as to one of the goods listed, the entire registration is held void. It is also clear that a good faith effort to amend the registration to correct misstated goods, which proposed amendment is filed after the commencement of an *inter partes* proceeding, will not cure the fraud arising from the misstatements. *Id.*, ¶ 32.

-   With respect to U.S. Reg. No. 1,980,522, if in fact the mark was not in use in commerce on ladles, spatulas and scoops at the time the Declaration of Continued Use was filed by Plaintiff in the PTO, the Declaration of Continued Use would be considered a fraudulent submission to the PTO and the registration should be cancelled in its entirety. *Id.*, ¶ 36.

-   It is my understanding that, in response to discovery requests propounded by Defendant herein, Plaintiff has not demonstrated use of certain of its registered marks on or in connection with certain goods listed in those registrations for at least three consecutive years, and Plaintiff has indicated, in depositions, that it has no plans to use such marks on such goods.

    If, in fact, a registered mark has not been used in connection with certain goods listed in a registration for at least three consecutive years, and the registrant has indicated that it has no plans to use the registered mark on such goods, the mark would be considered, *prima facie*, abandoned for such goods and, in the absence of evidence rebutting the presumption of abandonment, the registration should be cancelled for those goods. Krugman Supp. Report, Exh. B, ¶¶ 3-4.

-   With respect to Reg. No. 1,980,522, it is my understanding that, in response to discovery requests propounded by Defendant herein and in response to questions asked during a deposition of Plaintiff, Plaintiff has not demonstrated that, at the time the declaration under Section 15 of the Trademark Act was made, it had made continuous use of the mark in commerce for five consecutive years after the date of registration with respect to cutlery in precious metal or not, namely forks, knives, spoons and ladles, spatulas and scoops, and that Plaintiff had used the mark in connection with these goods for a period of, at most, two years.

> With respect to Reg. No. 1,980,522, if in fact the mark RITZ, at the time the
> section 15 declaration was filed with the PTO, was not in continuous use in
> commerce for five consecutive years after the date of registration with respect to
> cutlery in precious metal or not, namely forks, knives, spoons and ladles, spatulas
> and scoops, the declaration of incontestability under Section 15 of the Trademark
> act would be considered to be a false statement and a fraudulent submission to the
> PTO and the registration should be cancelled in its entirety, under the authority of
> *Crown Wallcovering* and *Duffy-Mott* noted, *supra. Id.*, ¶¶ 8-9.

These excerpts from the Krugman Report are merely a small portion of the legal opinions

with which Shen proposes to have him regale the jury, including references to specific sections

of the Lanham Act, citations to cases, and even going so far as to have Krugman opine to the

jury the verdict for Shen that he contends the law dictates.  It is hard to imagine expert legal

testimony that could be more impermissible than this, and Krugman's opinions on their face

cannot be considered at trial based on the controlling Third Circuit authority recited *supra*.

Even worse, Krugman's opinions are either wrong or premised on blatant falsehoods.

Most of Krugman's opinions having to do with fraud are premised on his contention that "fraud

on the PTO involves a false representation of a material fact which the person either knows *or*

*should know* is false . . . ."  Krugman Report, Exh. A, ¶ 28 (emphasis added).  This legal

characterization is totally at odds with the Court's correct understanding of the law of fraud, as

recited in the memorandum and order of March 17, 2009 [Dkt. No. 79] (*reconsideration granted*

*in part and denied in part* June 4, 2009 [Dkt. No. 102]), in which the Court stated that:

> Fraud in procuring a mark occurs when a trademark applicant or
> registrant knowingly makes false, material representations of fact
> to the PTO in applying for or seeking to maintain a registration.
> *See Metro Traffic Control v. Shadow Network*, 104 F.3d 336, 340
> (Fed. Cir. 1997).  Even a false statement to the PTO is not
> fraudulent if it results from an honest misunderstanding,
> inadvertence, negligent omission or the like, rather than a willful
> intent to deceive.  *See Smith Int'l, Inc. v. Olin Corp.*, 209 U.S.P.Q.
> 1033, 1043 (T.T.A.B. 1981).  Proof of fraud requires proof that
> scienter, *i.e.*, the false statement was made knowingly.  *Marshak v.*
> *Treadwell*, 240 F.3d 184, 196 (3rd Cir. 2001).  A party seeking

cancellation for fraudulent procurement must prove the alleged fraud by clear and convincing evidence. *L.D. Kichler Co. v. Davoil*, 192 F.3d 1349, 1351 (Fed. Cir. 1999).

*Id.* [Dkt. No. 79] at 5, *adhered to on reconsideration*, [Dkt. No. 102] at 5.

Not only do Krugman's opinions on fraud contradict the Court's own holding, they are premised on a line of TTAB cases beginning with *Medinol v. Neuro Vasx, Inc.*, 67 U.S.P.Q. 2d 1205 (T.T.A.B. 2003), Krugman Report, Exh. A, ¶¶ 30-32, that articulated a "should have known" standard for fraud that the Third Circuit specifically rejected in *Marshak v. Treadwell*, 240 F.3d 184, 196 (3rd Cir. 2001), as the Court also recognized in its June 4th Order [Dkt. No. 102] at 5 n. 4. As if this were not enough, the Federal Circuit Court of Appeals has recently specifically repudiated the "should have known" standard articulated in *Medinol* and held that only willful, knowingly deceptive statements made to obtain or maintain a trademark registration make cancellation on the ground of fraud appropriate. *See In re Bose Corp.*, 580 F.3d 1240 (Fed. Cir. 2009). Under no circumstances should the Court permit Krugman to advance at trial a false portrayal of the law governing Shen's fraud counterclaim.

In addition, the factual assumptions underlying his legal opinions are in some cases flat-out wrong. To offer only two examples, RHL has never indicated "in depositions, that it has no plans to use such [RITZ PARIS] marks on such goods [at issue in this action]," Krugman Supp. Report, Exh. B, ¶ 3, nor does Krugman's Supplemental Report reveal where this supposed admission can be found, what marks it concerns and the goods to which it pertains. Krugman also claims that "It is my understanding that, in response to discovery requests propounded by Defendant herein, Plaintiff has not demonstrated use of the [RITZ] mark with all of the goods listed in the registration, and that, at least with respect to 'ladles, spatulas and scoops,' the [Lanham Act section 8] declaration of continued use filed on June 18, 2002 was assertedly not

true." Krugman Report, Exh. A, ¶ 34. However, this allegation is demonstrably false, as RHL's witnesses have testified.

In sum, Krugman's opinions are entirely legal, impermissible under controlling Third Circuit authority because they usurp the role of the trier of fact, are legally wrong on certain critical points, and are factually off-base in other respects. Because there is no basis for the presentation of such deeply flawed testimony at trial, the Court should exclude Krugman's opinions from evidence.

B.   Portions of Krugman's Opinions Are Irrelevant to the Issues Remaining for Trial

There are other serious defects that afflict portions of Krugman's testimony and render it inadmissible at trial. Portions of his Report are devoted to arguing why RHL's U.S. Reg. No. 2,669,712 for RITZ ESCOFFIER should be cancelled on the ground of fraud, *see* Krugman Report, Exh. A, ¶¶ 35, 37, but this registration has already lapsed due to RHL's non-renewal. *See* Order of August 6, 2009 [Dkt. No. 108] at n.1. Thus, this testimony is plainly not admissible on the ground of relevance, as well as for the reasons articulated above.

In addition, as background for his opinions that RHL's various registrations are susceptible to cancellation on the grounds of fraud and abandonment, Krugman devotes a vast swath of his Report to explaining trademark filings that must be made at the PTO, what the law requires such filings to contain, and other matters. Krugman Report, Exh. A, ¶¶ 19-27. However, Krugman's Report is entirely concerned with trademark applications filed under sections 1(a) and 1(b) of the Lanham Act, 15 U.S.C. §§ 1051(a) and (b), which, respectively, are concerned with marks used in commerce and intended for use in commerce. But in this case, *all* of the registrations at issue on Shen's cancellation counterclaim were issued under Lanham Act section 44, 15 U.S.C. § 1126, *see* Stipulated Uncontested Facts, ¶¶ 6-8, 10-12, 15-17, a statutory

provision that authorizes the owner of an international trademark registration to obtain a U.S. registration, subject to certain conditions, without evidence of use of its mark in U.S. commerce. Thus, all of Krugman's testimony about U.S. intent-to-use filings, notices of allowance and other matters that have no bearing on section 44 filings that are described in paragraphs 19-27 of his Report should be excluded as irrelevant.[2]

---

[2]    As with so many of Krugman's opinions, this portion of his Report is also just plain wrong.  Krugman opines in paragraphs 26 and 27 of his Report that maintenance filings under section 8 of the Lanham Act, 15 U.S.C. § 1058, and renewals of registrations filed under section 9, 15 U.S.C. § 1059, require goods with which the subject mark is not "currently in use" to be deleted.  However, the Court has already recognized that this is not true, and that a trademark registrant can maintain or renew a registration for a mark not in use if it can show a valid excuse for the non-use.  *See* Order of March 17, 2009 [Dkt. No. 79] at 11-12 n. 8.  *See* 15 U.S.C. § 1059, 37 C.F.R. §§ 2.161(f)(2), 2.166, *Trademark Manual of Examining Procedure* (6th) § 1604.11.

## CONCLUSION

For the reasons set forth above, RHL respectfully submits that the Court should grant this

motion *in limine* in its entirety and exclude from evidence at trial the opinions of Shen's expert

Gary Krugman, together with his Report and Supplemental Report (Shen Trial Exhs. 90 and 91),

along with the complete copy of his deposition transcript and exhibits (Shen Trial Exh. 17)

pursuant to Rules 402, 403, 702 and 704 of the Federal Rules of Evidence.

Dated: November 2, 2009

MONTGOMERY, MCCRACKEN,
WALKER & RHOADS LLP
Christopher Scott D'Angelo
123 South Broad Street
Philadelphia, PA 19109-1099
tel.: 215-772-7397
fax: 215-731-3767

DORSEY & WHITNEY LLP


By:___S/_____
    Lile H. Deinard
    Bruce R. Ewing
    250 Park Avenue
    New York, New York 10177
    tel: (212) 415-9200
    fax: (212) 953-7201

    KASOWITZ, BENSON, TORRES &
    FRIEDMAN LLP
    Mitchell R. Schrage
    R. Tali Epstein
    1633 Broadway
    New York, New York 10019
    tel: (212) 506-1700
    fax: (212) 506-1800

    Attorneys for Plaintiff

# EXHIBIT A

05/22/2006 17:12 IFAX FAX_CENTER-NY@DORSEY.COM                    → Fax_Center-NY   ☒007/024
May.22. 2006  4:50PM                                                 No.1682   P. 7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE RITZ HOTEL, LIMITED,<br><br>      Plaintiff,<br><br>      v.<br><br>SHEN MANUFACTURING COMPANY,<br>INCORPORATED,<br><br>      Defendant. | 2:05-cv-04730-AB |

### EXPERT WITNESS REPORT OF GARY D. KRUGMAN

1.      I have been retained by Defendant, Shen Manufacturing Company, Incorporated, to offer my opinions in connection with Case No.: 2:05-cv-04730-AB now pending in the U.S. District Court for the Eastern District of Pennsylvania. My opinions are based on my experience as a former Administrative Trademark Judge with the Trademark Trial and Appeal Board and my familiarity with trademark law as more fully noted below.

### I.    QUALIFICATIONS

2.      I received a Bachelor of Science Degree (B.S.) from the State University of New York at Albany, Albany, New York in June, 1969 and a Law Degree (J.D.) from Case Western Reserve University School of Law in Cleveland, Ohio in June, 1973.

3.      After passing the Bar Examination in the District of Columbia in 1973, I was admitted to the District of Columbia Court of Appeals on December 7, 1973.

4.      From 1974 through 1978, I was an Examining Attorney in the Trademark Examining Operation of the U.S. Patent and Trademark Office (PTO).  As an Examining Attorney, I reviewed applications for trademark registration, both for inherent registrability and for conflicts with existing registrations and earlier filed pending applications.

5.      In 1978, I was appointed to the position of Attorney Examiner at the Trademark Trial and Appeal Board (TTAB or Board).

6.      In 1982, I was appointed to the TTAB as an Administrative Trademark Judge and I served in that capacity until August, 1989.

7.      The TTAB is the Administrative Trademark Court of the Patent and Trademark Office and the TTAB Administrative Trademark Judges serve as the final agency decision makers in trademark registrability questions in the context of appeals taken by an applicant from the Trademark Examining Attorney's refusal of registration.  The TTAB also serves as the final agency decision maker in inter partes trademark registrability proceedings including oppositions to prevent registration of a trademark and cancellations to cancel existing trademark registrations.

8.      In my position as an Administrative Trademark Judge, I authored final agency decisions on registrability issues and participated on three-Judge panels with respect to final decisions authored by other Judges.

9.      In August, 1989, I left government service and joined the firm of Sughrue Mion, PLLC (formerly Sughrue, Mion, Zinn, Macpeak & Seas, PLLC) in Washington D.C.  I am currently a partner in that firm, specializing in trademark law, unfair competition and litigation before state and federal courts and the PTO.

05/22/2006 17:12 IFAX FAX_CENTER-NY@DORSEY.COM                    → Fax_Center-NY  Ø009/024
   May.22. 2006  4:50PM                                            No.1682   P. 9

10.     In addition to being admitted to practice before the D.C. Court of Appeals, I am admitted before the U.S. District Court for the District of Columbia, the U.S. Court of Appeals for the District of Columbia Circuit, the U.S. Court of Appeals for the Federal Circuit and the U.S. Supreme Court.

11.     I have lectured frequently on subjects relating to trademark law, trademark protection and practice before the TTAB at meetings, seminars and conferences sponsored by the District of Columbia Bar, the International Trademark Association, the American Intellectual Property Law Association and various other state and city bar associations. I have also lectured in Beijing, China and Tokyo, Japan on trademark law matters as an invited lecturer of associations of trademark practitioners in those countries.

12.     I have authored several articles on various aspects of trademark law and protection which have been published in IP Litigator, The Trademark Reporter, The American Intellectual Property Law Association Selected Legal Papers and the D.C. Bar Intellectual Property Law Section Newsletter. I am the author of a book entitled Trademark Trial and Appeal Board Practice and Procedure which was first published in April, 1997 and is updated annually. In addition, I am a former adjunct faculty member at The Catholic University School of Law in Washington, D.C. where I taught trademark law and unfair competition for a number of years.

13.     I am a former Chair of the Public Advisory Committee to the trademark operation of the U.S. Patent and Trademark Office. I am a former co-Chair of the Steering committee of the Intellectual Property Law Section of the D.C. Bar, a former Chair of the Trademark

Committee of the Intellectual Property Law Section of the Bar Association of the District of

Columbia and a former Chair of the ABA Sub-Committee on TTAB Affairs. I am a former

editor of the <u>Trademark Reporter</u>, a quarterly publication on matters of interest to the trademark

bar. I have been named on several occasions in the "Guide to the World's Leading Trademark

Law Practitioners" sponsored by Managing Intellectual Property magazine and I have been

named on several occasions in the "International Who's Who of Trademark Lawyers." A current

resume setting forth my education, experience and publications is attached hereto as Exhibit No.

1. In addition, attached hereto as Exhibit 2 is a listing of cases in connection with which I have

testified as an expert at trial or by deposition within the preceding four years.

     14.    With respect to my compensation in connection with time expended in reviewing

this matter and providing my testimony or other opinions, I am being compensated at my usual

rate of $490.00 per hour.

## II.    BASES FOR TESTIMONY

     15.    In preparing for my testimony, I have familiarized myself with the issues in this

case by reviewing:

     (a)    The Complaint for Declaratory Judgment filed by Plaintiff, the Ritz Hotel,

Limited.

     (b)    Defendant's Answer and Counterclaim.

     (c)    Plaintiff's Reply to Defendant's Counterclaims.

     (d)    Plaintiff's Response to Defendant's First Set of Interrogatories.

    (e)    Defendant's Motion for Summary Judgment and Motion for Leave to Amend Pleadings filed in the Trademark Trial and Appeal Board in consolidated Cancellation Nos. 91/156,252. 91/156,314, 91/156,556, 91/157,359 and 91/157,390.

    (f)    File histories of Plaintiff's Registration Nos. 2,669,712 and 1,980,522.

16.    I have reviewed all of the foregoing materials in light of the Trademark Act of 1946 (Lanham Act), as well as applicable decisions of the courts, the Trademark Trial and Appeal Board and recognized treatises on trademark law.

## III.   SUMMARY OF TESTIMONY

17.    It is my intention to testify on the nature of the examination of a trademark application at the Patent and Trademark Office (PTO), including the procedural steps followed leading to registration and the steps needed to be followed to maintain an existing registration.

18.    It is also my intention to testify on the issue of fraud on the PTO, specifically, what constitutes fraud in the obtaining and/or maintaining of a federal trademark registration.

## IV.   EXPECTED TESTIMONY

    A.   Examination of Trademark Applications/Maintenance of Trademark Registrations.

19.    When an application for registration is filed in the PTO, it is examined by a Trademark Examiner. If the application is based on use in commerce, the particular goods in connection with which the mark is used must be set forth in the application. If, on the other hand, the application is filed on the Applicant's bona fide intention to use the mark in the future, the

particular goods in connection with which the Applicant has a bona fide intention to use the mark must be set forth in the application.

20.    Once an application is approved by the Examiner, it is published for opposition in a weekly trademark Official Gazette. Anyone who believes he will be damaged by the registration of the mark may file a Notice of Opposition requesting that registration be refused..

21.    If no opposition is filed within the time allowed or, if an opposition is filed and is ultimately dismissed, a mark which is the subject of a use based application then proceeds forward and a federal registration issues. A mark which is the subject of an intent to use application, however, does not immediately proceed to registration. Rather, in the latter situation, the PTO issues a Notice of Allowance, allowing Applicant six months from the date of issue of the Notice of Allowance in which to demonstrate use in commerce of the mark in connection with the goods identified in the Notice of Allowance and file what is called a Statement of Use. Alternatively, the Applicant may obtain an extension of time to file a Statement of Use.

22.    An applicant may obtain extensions of time to file a Statement of Use totaling three years from the date of the Notice of Allowance. If the Applicant fails to file timely extensions of time to file a Statement of Use or if the Applicant no longer has any extensions of time available, the failure to file a Statement of Use results in an abandonment of the application.

23.    The Statement of Use must set forth all the goods identified in the application in connection with which the mark is used in commerce. The Statement of Use must also be accompanied by a specimen, or example, of such use of the mark on at least one of the products listed in the Notice of Allowance.

24.    If, at the time the Statement of Use is filed, the mark is in use on some but not all of the goods listed in the Notice of Allowance, the Applicant must make it clear that the Statement of Use covers fewer than all the goods listed in the Notice of Allowance by deleting the goods not in use or by requesting that the goods not in use be divided out into a separate application

25.    Following the examination and acceptance of the Statement of Use, the mark will proceed to registration for all the goods set forth in the Statement of Use.

26.    The Trademark Act provides that a registration is in existence for ten years and may be renewed in ten year increments.  The Act further provides that, between the fifth and sixth years following the issuance of a registration, the registration owner must file a Declaration of Continued Use of the mark for the goods set forth in the registration.  This declaration must be accompanied by  an example or specimen of current use of the mark for at least one of the goods listed in the registration.  If, at the time the Declaration of Continued Use is filed, the registered mark is not currently in use on all of the goods listed in the registration, the registration owner must delete the goods not in use from the registration.

27.    If, at the end of each ten-year period of the registration, the registration owner wishes to renew the registration for an additional ten-year period, the Trademark Act requires that the renewal papers include a Declaration of Continued Use, indicating current use of the mark on all the goods listed in the registration.  This declaration must be accompanied by an example or specimen  of continued use of the mark for at least one of the goods listed in the registration.  If, at the time the Declaration of Continued Use is filed, the registered mark is not

currently in use on all of the goods listed in the registration, the goods not in use must be deleted from the registration.

### B.     Fraud on the PTO

28.     As a general proposition, fraud on the PTO involves a false representation of a material fact which the person either knows or should know is false and which representation is relied upon by the PTO to either allow the registration to issue or to allow the registration to be maintained.

29.     Since the PTO does not ordinarily question averments made in papers submitted in an application or in a registration for fraud, the fraud claim is usually made in the context of a subsequent inter partes proceeding and typically comes up in the context of a cancellation proceeding wherein a party seeks to cancel a registration based on asserted fraudulent statements made to the PTO in the course of obtaining or maintaining the registration.

30.     The Trademark Trial and Appeal Board (TTAB) and its reviewing court, the U.S. Court of Appeals for the Federal Circuit, have had a number of occasions to determine the issue of fraud on the PTO in the context of a representation made to the PTO regarding false statements made in a Statement of Use or made in a post registration Declaration of Continued Use.  For example, in the case of <u>Medinol Ltd. V. Neuro Vasx, Inc.</u>, 67 USPQ 2d 1205 (TTAB 2003), the applicant filed an intent to use application for registration for a mark covering goods described as "neurological stents and catheters." The applicant subsequently filed a Statement of Use covering both products although no use of the mark was ever made with respect to "stents."

In a subsequent cancellation action to cancel the resulting registration on fraud grounds, the registration owner admitted no use of the mark on stents but argued that the Statement of Use constituted an innocent error and no fraud was involved. The registration owner also sought to amend the registration to delete stents from the description of goods.

The TTAB found that the Statement of Use was, in fact, fraudulent and that allowing the proposed amendment to delete "stents" would not cure the fraud. The TTAB concluded that, regarding whether the registration owner intended to mislead the PTO, the appropriate inquiry was not the subjective intent of the registration owner but, rather, the objective manifestations of that intent. The TTAB then granted the petitioner's motion for summary judgment on fraud grounds and ordered the entire registration cancelled.

31.     Similarly, false representations made to the PTO in the context of a post-registration Declaration of Continued Use have been held to be fraudulent, resulting in cancellation of the entire registration. See, for example: Torres v. Cantine Torresella S.r.L., 808 F.2d 46, 1 USPQ 2d 1483 (Fed. Cir. 1986).

32.     It appears clear, after the TTAB decision in the Medinol case, supra, that explanations of misunderstanding, mistake, oversight, etc. will not avoid a fraud finding where a Statement of Use or post-registration Declaration of Continued Use misstates the goods in connection with which the mark is used and that if fraud is found even as to one of the goods listed, the entire registration is held void.

It is also clear that a good faith effort to amend the registration to correct misstated goods, which proposed amendment is filed after the commencement of an inter partes proceeding, will not cure the fraud arising from the misstatements.

33.    In the present case, it is my understanding that defendant has raised the issue of fraud with respect to Plaintiff's Registrations Nos. 1,980,522 (RITZ) and 2,669,712 (RITZ ESCOFFIER) on the grounds that Plaintiff filed a false Declaration of Continued Use in connection with Reg. No. 1,980,522 and a false Statement of Use in connection with Reg. No. 2,669,712.

34.    Specifically, with respect to Reg. No. 1,980,522 for the mark RITZ, that registration issued on June 18, 1996 and covers "cutlery in precious metal or not, namely, forks, spoons, ladles, spatulas and scoops."

In the Declaration of Continued Use filed June 18, 2002, the declaration asserted use of the mark in connection with the above-identified goods.

It is my understanding that, in response to discovery requests propounded by Defendant herein, Plaintiff has not demonstrated use of the mark with all of the goods listed in the registration, and that, at least with respect to "ladles, spatulas and scoops," the declaration of continued use filed on June 18, 2002 was assertedly not true.

35.    With respect to Plaintiff's Reg. No. 2,669,712 for the mark RITZ ESCOFFIER, a Notice of Allowance issued in that case on October 23, 2001 listing the following goods:

1902492_1.DOC

Int. Class 25

Jams, jellies, marmalades and fruit preserves sold through specialty food stores,
through gourmet food sections of department stores, by mail order, via television
or via a global computer network; sauces; soups, soup mixes; pickles; cooking oil;
salad oil; edible oil; vinegar; dried mushrooms; dried morels; processed olives;
salad dressing; caviar; crystallized fruit; foie gras; fruit topping; canned fruit;
salmon; dried fruit; meat juices; pate; quenelles; preserved truffles; pickled
vegetables; vegetable based food beverages.

Int. Class 30

Chocolates not sold as ingredients for baking or for snack food products; coffee;
coffee substitutes; tea; salt; pepper; spices; honey; mustard; sugar; almond paste;
chutney; cocoa; horseradish; topping syrup; vinegar and salad dressing.

On or about June 21, 2002, Plaintiff filed a Statement of Use asserting use of the mark in

connection with all the goods identified in the Notice of Allowance.  The Statement of Use was

subsequently examined and  accepted by the PTO and the registration issued on December 31,

2002.

It is my understanding that, in response to discovery requests propounded by Defendant

herein, Plaintiff has not demonstrated use of the mark in connection with all of the goods listed

in the Notice of Allowance and that, at least with respect to "sauces, soups, soup mixes, salad

dressings, caviar, crystallized fruit; foie gras; meat juices, pate, quenelles, coffee substitutes, tea,

almond paste, chutney, cocoa and horseradish," the Statement of Use filed on or about June 21,

2002 was assertedly not true.

36.     With respect to Reg. No. 1,980,522, if in fact the mark was not in use in

commerce on ladles, spatulas and scoops at the time the Declaration of Continued Use was filed

by Plaintiff in the PTO, the Declaration of Continued Use would be considered a fraudulent submission to the PTO and the registration should be cancelled in its entirety.

37.    Similarly, with respect to Reg. No. 2,669,712, if in fact the mark was not in use in commerce on all of the goods listed in the Notice of Allowance at the time the Statement of Use was filed by Plaintiff in the PTO, the Statement of Use would be considered a fraudulent submission to the PTO and the registration should be cancelled in its entirety.


I declare under the penalties of perjury that the foregoing is true and correct, to the best of my knowledge.


May 18, 2006                          _____
                                      Gary D. Krugman

05/22/2006 17:12 IFAX FAX_CENTER-NY@DORSEY.COM                      → Fax_Center-NY    ☒019/024
May·22. 2006  4:54PM                                                No.1682   P. 19

*Gary D. Krugman*

# EDUCATION

Legal:        Case Western Reserve University School of Law
              Cleveland, Ohio
              J.D. June, 1973


College:      State University of New York at Albany
              Albany, New York
              B.S. June, 1969


# EXPERIENCE

1989-present: Partner (since 1993), SUGHRUE MION, PLLC,
specializing in trademark prosecution, litigation and related unfair
competition matters

1982-1989:    U.S. Patent and Trademark Office, Administrative
Trademark Judge, Trademark Trial and Appeal Board. Exercised original
jurisdiction in adjudicating inter-partes trademark proceedings in the
U.S.P.T.O., served in the capacity of administrative law judge in
conducting proceedings and rendering decisions which serve as the final
agency adjudication, and exercised appellate jurisdiction in adjudicating
ex parte appeals from refusals of the Trademark Examiner to register
trademarks.

1978-1982:    U.S. Patent and Trademark Office, Attorney Examiner,
Trademark Trial and Appeal Board; responsible for decisions on all
interlocutory non-final motions in inter partes proceedings before the
Board and responsible for drafting decisions for Board members on
potentially dispositive motions.

1974-1978:    U.S. Patent and Trademark Office, Trademark Attorney-
Trademark Examining Operation, examined trademark and service mark
applications.



EXHIBIT

1

*Gary D. Krugman*
*Page 2*

## MEMBERSHIPS AND AFFILIATIONS

> D. C. Court of Appeals
> U.S. District Court for the District of Columbia
> U.S. Court of Appeals—D.C. Circuit
> U.S. Court of Appeals--Federal Circuit
> U.S. Supreme Court
> Former Adjunct Professor - Catholic University School of Law
> Former Chairman - Public Advisory Committee - U.S. Patent and
> Trademark Office - Trademark Operations
> Former Chairman - Steering Committee - IP Law Section of the D.C. bar
> Former Chairman - ABA Subcommittee on Practice before the TTAB
> Former Member - editorial Board, <u>The Trademark Reporter</u>

## SEMINARS AND LECTURES

> Have given numerous lectures and participated in seminars from 1978 to
> the present on various topics relating to trademark law and practice before
> the Trademark Trial and Appeal Board.  These lectures and seminars have
> been sponsored by, among others:

> > D.C. Bar
> > AIPLA
> > International Trademark Association
> > State Bar of California
> > Toledo Patent Law Association
> > Bureau of National Affairs
> > Nassau County Bar Association
> > New York Patent Law Association
> > China Council for the Promotion of International Trade
> > Houston Intellectual Property Law Association
> > Cincinnati Bar Association

## PUBLICATIONS

> ### *Articles*

> 1.   "The Amended Trademark Rules of Practice and Their Effect on
>      Ex Parte Appeals" Vol. 74, The Trademark Reporter (July-Aug.
>      1984).

05/22/2006 17:12 IFAX FAX_CENTER-NY@DORSEY.COM                    → Fax_Center-NY   🏠 021/024
May.22. 2006  4:55PM                                              No.1682   P. 21

*Gary D. Krugman*
*Page 3*

2. "Motions for Judgment After Commencement of Testimony Periods" Vol. 73, The Trademark Reporter (Jan.-Feb. 1980).

3. "Testimony Depositions" Vol. 70, The Trademark Reporter (July-Aug. 1980).

4. "Interlocutory Do's and Don'ts Vol. 69, The Trademark Reporter (May-June 1979).

5. "How To Use Discovery in Inter Partes Cases" Vol. XI, Number 102
   AIPLA Selected Legal Papers (June 1994)

6. "How To Effectively Prosecute Trademark Applications at the U.S. Patent and Trademark Office" Vol. XII, Number 1 & 2
   AIPLA Selected Legal Papers (April 1995)

7. "Likelihood of Dilution" (co-authored with Leigh Ann Lindquist). Vol. VIII, Number 6, The I.P. Litigator (June/July, 2002).

### *Books*

"Trademark Trial and Appeal Board Practice and Procedure" - published by West Group (1997, 1999, 2001, 2002, 2003, 2004, 2005, 2006).

### GARY D. KRUGMAN
### EXPERT WITNESS EXPERIENCE

1.  **U.S. Search, L.L.C. v. U.S. Search.com, Inc,**

    Civil Action No. 00-554-A
    U.S. District Court for the Eastern District of Virginia

    Mark Involved:   U.S. SEARCH


2.  **Harvard Pilgrim Health Care, Inc. v. President & Fellows of Harvard College**

    Civil Action No. 00CV-104 91-RCL
    U.S. District Court for the District of Massachusetts

    Mark Involved:    HARVARD

3.  **March Madness Athletic Association, LLC v. Netfire, Inc. and Sports Marketing International, Inc.**

    Civil Action No. 3:00-CV-0398-R

    U.S. District Court for the Northern District of Texas

    Mark Involved:    MARCH MADNESS

4.  **Sears, Roebuck and Co. v. Menard, Inc.**

    Civil Action No. 01-C-9843

    U.S. District Court for the Northern District of Illinois

    Mark Involved:    WHERE ELSE?

5.  **Horizon Healthcare Services, Inc. v. Allied National, Inc.**

    Civil Action No. 03 CV 4098

    U.S. District Court for the District of New Jersey

    Mark Involved:    HORIZON

1902943_1.DOC

**EXHIBIT**

2

6.     **The Fresh Market, Inc. v. Marsh Supermarkets, Inc.**

      Civil Action No. 3:04 CV 770 AS

      U.S. District Court for the Northern District of Indiana

Mark Involved:      THE FRESH MARKET

7.     **Express Companies, Inc. v. Brandon Taylor and Susana Vega**

      Civil Action No. 03 CV 0805-WQH (AJB)

      U.S. District Court for the Southern District of California

Mark Involved:      FIRST-AID-PRODUCTS.COM

8.     **Harley-Davidson Motor Company Group, Inc. et al. v. Ridley Motorcycle Company**

      Civil Action No. 04 CV 1128

      U.S. District Court for the Eastern District of Wisconsin

Mark Involved:      AUTO GLIDE

9.     **Overlap, Inc. v. Citigroup Global Markets, Inc.**

      Civil Action No. 04-0025-CV-W-SOW

      U.S. District Court for the Western District of Missouri

Mark Involved:      OVERLAP

05/22/2006 17:13 IFAX FAX_CENTER-NY@DORSEY.COM                    → Fax_Center-NY  ☑024/024
  May.22. 2006  4:56PM                                             No.1682   P. 24

## CERTIFICATE OF SERVICE

I hereby certify that true copies of the Expert Opinion of Warren Shoulberg and the Expert Witness Report of Gary D. Krugman were served on this 22nd day of May, 2006, by sending the same by facsimile and first class mail, postage prepaid to:

Bruce R. Ewing, Esquire
DORSEY & WHITNEY, LLP
250 Park Avenue
New York, New York  10177
Phone: 212-415-9206
Facsimile: 212-953-7201

Christopher Scott D'Angelo, Esquire
MONTGOMERY, MCCRACKEN, WALKER & RHOADS LLP
123 South Broad Street
Philadelphia, PA 19109-1099
Phone: 215-772-1500
Facsimile: 215-772-7620

# EXHIBIT B

LAW OFFICES

# HARDING, EARLEY, FOLLMER & FRAILEY

JOHN F.A. EARLEY, P.C.
JOHN F.A. EARLEY III
FRANK J. BONINI, JR.
CHARLES L. RIDDLE

86 THE COMMONS AT VALLEY FORGE EAST
1288 VALLEY FORGE ROAD
POST OFFICE BOX 750
VALLEY FORGE, PENNSYLVANIA 19482-0750

U.S. AND INTERNATIONAL
INTELLECTUAL PROPERTY

| TELEPHONE | E-MAIL | FAX |
|---|---|---|
| (610) 935-2300 | heff@hardingearley.com | (610) 935-0600 |

July 21, 2006

***Via Facsimile and First Class Mail***
Bruce R. Ewing, Esquire
DORSEY & WHITNEY, LLP
250 Park Avenue
New York, New York  10177

Re:   The Ritz Hotel, Ltd. v. Shen Manufacturing Company Incorporated
        Civil Action No. 05-cv-04730
        Our File:  Shen E-2460

Dear Bruce:

I enclose the Supplemental Expert Report of Gary D. Krugman.

Very truly yours,

John F.A. Earley III

cc:  Christopher Scott D'Angelo, Esquire

PATENT · TRADEMARK · COPYRIGHT · UNFAIR COMPETITION · INTERNET · E-COMMERCE · COMPUTER · LICENSING

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE RITZ HOTEL, LIMITED,<br>    Plaintiff,<br><br>    - against -<br><br>v.<br><br>SHEN MANUFACTURING COMPANY,<br>INCORPORATED,<br>    Defendant. | :<br>:<br>:<br>:<br>:   2:05-cv-04730-AB<br>:<br>:<br>:<br>:<br>:<br>: |

## SUPPLEMENTAL EXPERT REPORT OF GARY D. KRUGMAN

1.      This report supplements my report dated May 18, 2006, which is incorporated herein by reference.

2.      Section 45 of the Trademark Act states in part that:

A mark shall be deemed to be "abandoned":

(1) When its use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. "Use" of a mark means the bona fide use of that mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127

3.      It is my understanding that, in response to discovery requests propounded by Defendant herein, Plaintiff has not demonstrated use of certain of its registered marks on or in connection with certain goods listed in those registrations for at least three consecutive years, and Plaintiff has indicated, in depositions, that it has no plans to use such marks on such goods.

4.      If, in fact, a registered mark has not been used in connection with certain goods listed in a registration for at least three consecutive years, and the registrant has indicated that it has no

2026612_1.DOC

plans to use the registered mark on such goods, the mark would be considered, prima facie, abandoned for such goods and, in the absence of evidence rebutting the presumption of abandonment, the registration should be cancelled for those goods.

5.      The Trademark Act provides that if a registrant uses a registered mark in commerce for five consecutive years, subsequent to the date of the registration, the registrant may obtain the right of incontestability (which provides the registrant with the presumption that the registration is conclusive evidence of the validity of the registered mark, and of the registration of the mark, and of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce, 15 U.S.C. § 1115(b)) by filing a declaration of incontestability under Section 15 of the Trademark Act.

6.      A false representation made to the United States Patent and Trademark Office ("PTO") in the context of a post-registration declaration under Section 15 of the Trademark Act has been held to be fraudulent, resulting in cancellation of the entire registration.  See Crown Wallcovering Corp v. The Wall Paper Mfgrs. Ltd., 188 U.S.P.Q. 141 (T.T.A.B. 1975); Duffy-Mott Co. v. Cumberland Packing Co., 57 C.C.P.A. 1046, 424 F.2d 1095 (C.C.P.A. 1970).

7.      With respect to Reg. No. 1,980,522 for the mark RITZ which covers "cutlery in precious metal or not, namely, forks, knives, spoons and ladles, spatulas, and scoops," the Plaintiff asserted continuous use of the mark in commerce for cutlery in precious metal or not, namely, forks, knives, spoons and ladles, spatulas, and scoops for five consecutive years after the date of registration in a declaration of incontestability filed under Section 15 of the Trademark Act.

8.      With respect to Reg. No. 1,980,522, it is my understanding that, in response to discovery requests propounded by Defendant herein and in response to questions asked during a deposition of Plaintiff, Plaintiff has not demonstrated that, at the time the declaration under Section 15 of

the Trademark Act was made, it had made continuous use of the mark in commerce for five consecutive years after the date of registration with respect to cutlery in precious metal or not, namely, forks, knives, spoons and ladles, spatulas, and scoops, and that Plaintiff had used the mark in connection with these goods for a period of, at most, two years.

9.     With respect to Reg. No. 1,980,522, if in fact the mark RITZ, at the time the Section 15 declaration was filed in the PTO, was not in continuous use in commerce for five consecutive years after the date of registration with respect to cutlery in precious metal or not, namely, forks, knives, spoons and ladles, spatulas, and scoops, the declaration of incontestability under Section 15 of the Trademark Act would be considered to be a false statement and a fraudulent submission to the PTO and the registration should be cancelled in its entirety, under the authority of Crown Wallcovering and Duffy-Mott noted, supra.


I declare under the penalties of perjury that the foregoing is true and correct, to the best of my knowledge.

July 21, 2006

Gary D. Krugman

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Supplemental Expert Report of Gary D. Krugman was served on this 21st day of July, 2006 by sending the same by facsimile and first class mail, postage prepaid to:

Lile H. Deinard, Esquire
Bruce R. Ewing, Esquire
DORSEY & WHITNEY
250 Park Avenue
New York, New York  10177

Christopher Scott D'Angelo, Esquire
MONTGOMERY, MCCRACKEN, WALKER & RHOADS LLP
123 South Broad Street
Philadelphia, PA  19109-1099